**Rafaela EURESTI et al., Plaintiffs-Appellants,**

v.

**Richard STENNER, as Administrator of the Weld County General Hospital, et al., Defendants-Appellees.**

**No. 71-1393.**

United States Court of Appeals, Tenth Circuit.

March 28, 1972.

Rehearing Denied June 13, 1972.

Marilyn G. Rose, Los Angeles, Cal. (Kirk Wickersham, Jr., Denver, Colo., and Jean Dubofsky, Boulder, Colo., on the briefs), for plaintiffs-appellants.

Ronald Lee Cooke, Denver, Colo. (Edward J. Krisor, Jr., Schneider, Shoemaker, Wham & Cooke, Denver, Colo., Samuel S. Telep, and Thomas A. Richardson, Greeley, Colo., on the brief), for defendants-appellees.

L. Patrick Gray, III, Asst. Atty. Gen., Dept. of Justice, James L. Treece, U. S. Atty., Walter H. Fleischer, Atty., Dept. of Justice, Sidney Edelman, Asst. Gen. Counsel, Dept. of Health, Education and Welfare, and Donald N. Young, Atty., Dept. of Health, Education and Welfare, filed a brief for the United States, amicus curiae.

Before CLARK *, Associate Justice, and HILL and DOYLE, Circuit Judges.

Mr. Justice CLARK:

Appellants seek through this class action to compel the administrators, trustees and county commissioners, who operate the Weld County Hospital, to provide a reasonable amount of free or below costs services to them and others similarly situated. The claim is based on Title VI of the Public Health Service Act, 42 U.S.C. § 291 et seq., popularly known as the Hill-Burton Act, which provides for federal grants of funds to a State and private parties to build or modernize a hospital facility on condition, *inter alia*, that the State be given assurances from the private parties that "there will be made available in the facility . . . a reasonable volume of services to persons unable to pay therefor . . . ."[1] Appellants filed this ac-

---

* Associate Justice of the United States Supreme Court, Retired, sitting by designation.

1. (e) that the State plan shall provide for adequate hospitals, and other facilities for which aid under this part is available, for all persons residing in the State, and adequate hospitals (and such other facilities) to furnish needed services for persons unable to pay therefor. Such regulations may also require that before approval of an application for a project is recommended by a State agency to the Surgeon General for approval under this part, assurance shall be re-

tion on behalf of poor people within the area surrounding the hospital; they contend that the hospital has received $1.6 million under this Act but has never provided services in compliance with its obligation.

The District Court, 327 F. Supp. 111, concluded that the Act did not create any contractual relationship between the United States and appellees; that, if it did, appellants have no standing to sue; and that, in any event, the action was barred by the Act itself in 42 U.S.C. § 291m,[2] limiting federal supervision or control of hospital administration. The complaint was therefore dismissed for failure to state a claim. We disagree and reverse the judgment for trial on the merits.[3]

### I.

The District Court concluded that no contractual relationship existed between the United States and appellee and that, therefore, appellees' receipt of $1.6 million in federal funds created no obligations upon them enforceable by either the United States or appellants. Our view of the Hill-Burton Act and the undertakings made under it lead us to a different conclusion. There can be no doubt by adopting this portion of the Hill-Burton Act, Congress intended to benefit indigents in the position of appellants. Congress expressed its purpose in the Act as "to assist the several States in the carrying out of their programs . . . to furnish adequate hospital, clinic, or similar services to all their people . . .." 42 U.S.C. § 291(a). An examination of the legislative history of the bill also indicates Congressional concern for providing hospital services for indigents. When the bill was first referred to the Senate Committee, it did not contain the language now in question. During these hearings a medical officer for the Department of Agriculture suggested that the bill be revised to include "safeguards

---

ceived by the State from the applicant that (1) the facility or portion thereof to be constructed or modernized will be made available to all persons residing in the territorial area of the applicant; and (2) there will be made available in the facility or portion thereof to be constructed or modernized a reasonable volume of services to persons unable to pay therefor, but an exception shall be made if such a requirement is not feasible from a financial viewpoint.

As required by this provision, the Surgeon General has promulgated 42 C.F.R. § 53.111:

Before an application for the construction of a hospital or medical facility is recommended by a State agency for approval, the State agency shall obtain assurances from the applicant that:

(a) The facility will furnish a community service;

(b) The facility will furnish below cost or without charge a reasonable volume of services to persons unable to pay therefor. As used in this paragraph, "persons unable to pay therefor" includes persons who are otherwise self-supporting but are unable to pay the full cost of needed services. Such services may be paid for wholly or partly out of public funds or contributions of individuals and private and charitable organizations such as community chest or may be contributed at the expense of the facility itself. In determining what constitutes a reasonable volume of services to persons unable to pay therefor, there shall be considered conditions in the area to be served by the applicant, including the amount of such services that may be available otherwise than through the applicant.

2. 42 U.S.C. § 291m reads as follows:
Except as otherwise specifically provided, nothing in this subchapter shall be construed as conferring on any Federal officer or employee the right to exercise any supervision or control over the administration, personnel, maintenance, or operation of any facility with respect to which any funds have been or may be expended under this subchapter.

3. Appellee notes that appellant Euresti has received assistance from the hospital. This fact should be taken into account in the determination on the merits, but it is not grounds for dismissal of the suit. Since the suit is brought as a class action, it may not be settled or compromised unless the trial court finds that such a disposition is in the interest of the whole class. Rules of Civil Procedure Rule 23(c).

to ensure that hospitals will continue to carry out the purposes on which approval for their construction was based." Senator Taft, a major supporter of the bill, and Senators Pepper and Ellender pursued this problem in the following colloquy:

Senator Taft: Let me suggest something else. You would say a hospital accepting aid of this kind should have an obligation to take care of a certain number of indigent patients. Most of them do, but I mean if they are going to have Federal money, should there not be a definite obligation to handle a certain number of indigent patients?

Dr. Mott: Senator, I would think there would certainly be an obligation to meet the needs of all the people of that hospital service area for which the hospital was designed, which would, of course, include many indigent and medically indigent.

. . . . . .

Senator Pepper: This is what occurred to me, Senator . . . . that in determining the burden which the hospital should be expected to carry, they might not be able to get Federal aid unless they agreed to take a fixed number of indigent patients.

. . . . . .

Senator Ellender: If people in all localities were able to pay for hospitalization there would be no need for this bill. It seems to me that our primary purpose should be to devise means to take care of those who cannot take care of themselves. My reason for supporting a bill providing for Federal aid to build hospitals is to make it easy for the community in which a hospital is built to give aid to the indigent.

Hearings Before the Comm. on Educ. and Labor on S. 191, U. S. Senate, 79th Congress, 1st Sess., March 12, 1945, at pp. 190–91.

■ Thereafter, when the bill was reported to the Senate, it contained the more specific provisions of § 291c. Thus the legislative history and the expressed purposes of Congress indicate that the Act was passed to ensure that the indigent would be supplied sufficient hospital services when needed. With this clear intent, it is not decisive that the language of the Act included no explicit indication that indigents were to have a right to enforce the Act's provisions. A civil remedy may be implied for those clearly within the protective realm of legislation or regulations in the public interest. Texas & Pacific Ry. Co. v. Rigsby, 241 U.S. 33, 40, 36 S.Ct. 482, 60 L.Ed. 874 (1916). See Note, Implying Civil Remedies from Federal Regulatory Statutes, 77 Harv.L.Rev. 205 (1963). The implication of such a right is not dependent upon the existence of a formal contractual relationship. See Hooper v. Mountain States Sec. Corp., 282 F.2d 195 (CA 5 1960); cf. United States v. Feaster, 330 F.2d 671 (CA 5 1964); United States v. American Bell Tel. Co., 128 U.S. 315, 9 S.Ct. 90, 32 L. Ed. 450 (1888).

■ Even if a contractual relationship were required, we find it exists here. The contract between appellees and the State of Colorado explicitly incorporates the federal statutory obligation. In turn, the State's obligation to provide assurances of compliance is the sine qua non for the furnishing of federal funds. Indeed, appellee's obligation is set out specifically in the closing papers signed by the hospital, the State and federal authorities.[4] Nothing could

---

4. These papers include the following agreement:

IN CONSIDERATION OF THE FOREGOING, the parties hereto mutually agree as follows:

(1) *THE APPLICANT agrees* that it it will construct the project or cause it to be constructed to final completion in accordance with the application it has submitted . . ., and will *comply strictly with the assurances contained in the application;* . . . [and] *that the hospital will thereafter be maintained and operated in accordance with the assurances given in the application* . . . .. (Emphasis added.)

be clearer: In receiving federal funds, appellees obligated themselves to dispense a reasonable amount of free hospital services to those unable to pay.

## II.

With the obligation established, it is clear that appellants have standing to enforce the obligation. The appellants are the intended beneficiaries of the Federal obligation sought to be enforced here and have standing to maintain this action. See Barlow v. Collins, 397 U.S. 159, 90 S.Ct. 832, 25 L.Ed.2d 192 (1970); Kentucky Utilities v. Collins, 390 U.S. 1, 88 S.Ct. 651, 19 L.Ed.2d 787 (1968); Gomez v. Florida State Employment Service, 417 F.2d 569 (C.A.5, 1969); Cook v. Ochsner Foundation Hospital, 319 F.Supp. 603 (D.C.1970). We find all of the necessary factors in support of the right to private action to be present here. Cf. Flast v. Cohen, 392 U.S. 83, 88, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968). Also, see, Note, Implying Civil Remedies from Federal Regulatory Statutes, 77 Harv.L.Rev. 285 (1963). We, therefore, reject the contention that reliance must be placed solely on the possibility of a fund cut-off of other subsequent grants under the Act. All of the federal funds involved here have already been granted and a cut-off would not affect appellees but other innocent grantees. By permitting this private action the public interest in the proper administration of the Hill-Burton Act is achieved and the obligation of appellees enforced.

## III.

We likewise conclude that § 291m is not a bar to the enforcement of these obligations. This provision clearly is not, as the District Court interpreted it, a prohibition against every Federal action which might have an impact on the operation of a hospital. Instead, it merely bars attempts of federal officers to interfere with the daily administration of the hospitals in areas not specifically dealt with in the Act.[5] To read the provision more broadly, as the appellees contend, would defeat the salutary purposes of the Act.

Reversed and remanded.

---

5. In commenting on this provision, the House Committee report on the bill (H. Rep.No. 2519, 79th Cong., 2d Sess., 1946) states at page 113:

The concluding section of the new Title VI makes it clear that, *except in the matters specifically dealt with elsewhere in the Title*, the proposed new Title does not confer on any Federal officer or employee any supervisory authority over the administration, personnel, maintenance, or operation of any hospital receiving Federal aid under the Title. (Emphasis added.)