Willis J. POIRRIER, Jr., and Clement Jasmin, Individually and as representatives of John Does and Jane Does, similarly situated, Plaintiffs,

v.

ST. JAMES PARISH POLICE JURY et al., Defendants.

Civ. A. No. 73-2104.

United States District Court, E. D. Louisiana.

March 15, 1974.

Paul G. Aucoin, Vacherie, La., for plaintiffs.

Charles S. Becnel, Vacherie, La., for defendants St. James Parish Police Jury and Paul Keller.

Walter J. Horrell, Baton Rouge, La., for defendants Dr. Charles Mary and H. K. Sweeney.

John H. Musser, IV, Asst. U. S. Atty., for U. S. and Dept. of Health, Education and Welfare.

ALVIN B. RUBIN, District Judge:

In this class action a group of residents of St. James Parish seek to compel the St. James Parish Police Jury to open the St. James Parish West Bank Hospital, which has stood vacant and unused since its construction was completed over eighteen months ago. The plaintiffs brought the Secretary of Health, Education and Welfare into their suit against the state and local officials by amended complaint, alleging that he is a necessary party because he is responsible for the administration of the Hill-Burton Act funds that helped to build the hospital.

The Secretary has moved to dismiss the plaintiffs' complaint against him or, in the alternative, for summary judgment in his favor. He argues that the complaint does not state a cause of action, that the plaintiffs have no standing to sue him,[1] and that in any event he is entitled to summary judgment because of the evidence he has introduced.

## I. THE CLAIM FOR RELIEF

Plaintiffs argue that the Hill-Burton Act, 42 U.S.C. § 291 et seq., creates a private right of action in the residents of an area to be served by a Hill-Burton hospital, permitting them to sue to enforce the terms of the Department's agreement with state and local officials. Implicit in this agreement, they argue further, is an undertaking by the local officials to open the hospital once it is completed; any other reading of it would defeat the entire purpose of the project. Although such a claim would lie chiefly against the parochial officials directly responsible for opening and operating the hospital, the Secretary enters the picture because of his right under 42 U.S.C. § 291i to recover Hill-Burton funds whenever a project ceases to be a public health center or public hospital. Plaintiffs ask that the court order the hospital opened or the Hill-Burton grant returned to the Department.

There is authority holding that the Act creates a private, civil remedy for some problems that may arise after grants are made. In Euresti v. Stenner, 10 Cir. 1972, 458 F.2d 1115, the court held that indigents may sue to enforce the community service assurance hospital authorities must give under 42 U.S. C. § 291c(e)(2). Several district courts, including the Eastern District of Louisiana, have reached the same result. Organized Migrants in Community Action, Inc. v. James Archer Smith Hospital, S.D.Fla.1971, 325 F.Supp. 258; Cook v. Ochsner Foundation Hospital, E.D.La.

---

1. In a brief minute entry dated December 23, 1974, the court held that the plaintiffs had standing to bring this action. Because the problems of standing and the existence of a cause of action are inextricable in a case like this, see Albert, Standing to Challenge Administrative Action: An Inadequate Surrogate for Claims for Relief, 83 Yale L. J. 425 (1974), the court will review matters decided in that minute entry without specifically separating them.

1970, 319 F.Supp. 603. In an earlier case, Stanturf v. Sipes, 1964, 335 F.2d 224, cert. den. 379 U.S. 977, 85 S.Ct. 676, 13 L.Ed.2d 567, the Eighth Circuit reached a somewhat different result, but its holding that the Act did not imply a private action for damages for breach of the community service assurance is not necessarily inconsistent with these later holdings permitting private suits asking injunctive relief to enforce the assurance.

It would, however, require an extension of the civil remedy doctrine to read that method of achieving the Act's objectives into the present context. In finding an implied cause of action on behalf of indigents, Justice Clark's opinion in Euresti v. Stenner, *supra,* rested heavily upon manifestations of Congress' intent to protect the poor when it enacted the community service requirement of the statute. A similar examination of the legislative history discloses no indication that Congress intended the Act to create a remedy by private litigants to compel the institution to be opened. See S.Rep.No.1274, 88th Cong., 2d Sess., 1964 U.S.Code Cong. & Admin.News, p. 2800. Moreover, Justice Clark avoided the impact of 42 U.S.C. § 291m,[2] which restricts federal authority over actual hospital operations, by finding that it does not apply to matters dealt with specifically by the Act.

Here, the Act is silent as to federal officials' authority to compel a hospital to open. And there is a considerable practical difference between ordering an existing institution to broaden its clientele and requiring an institution to be opened to all ab initio; the court would need at least to consider the adequacy of other remedies and the administrative problems that supervising the opening of a hospital would create before embarking on such a venture.

There is at this moment no need to essay a final answer to these problems. Under the liberal standards of federal notice pleading, the plaintiffs' complaint states a claim for judicial review of administrative action—in this case, administrative inaction—on the ground that the Secretary has abused the discretion given him by the Hill-Burton Act. The court thus will deal with the issues now presented on the relatively firm ground underlying a claim for review of administrative action and avoid the *terra incognita* of an implied right of action under Hill-Burton.

■ The Act does vest the Secretary with substantial discretion. But administrative discretion is not license for lethargy, and the Secretary admits that his discretion under the Act is not boundless. For example, the statute requires him at some point to seek a refund of the Hill-Burton grant unless he makes the affirmative determination under the Act that such action is not appropriate. 42 U.S.C. § 291i. The concession was a wise one; discretion "is not self-defining; it does not arise parthenogenetically from 'broad' phrases. Its contour is determined by the courts, which must define its scope and limits." Jaffe, Judicial Control of Administrative Action 572 (1965). See Safir v. Gibson, 2d Cir. 1969, 417 F.2d 972.

■ There are some matters so thoroughly committed to agency discretion that a court may not review them. Dav-

2. § 291m provides:
   Except as otherwise specifically provided, nothing in this subchapter shall be construed as conferring on any Federal officer or employee the right to exercise any supervision or control over the administration, personnel, maintenance, or operation of any facility with respect to which any funds have been or may be expended under this subchapter.
   In *Euresti,* Justice Clark wrote: "This provision clearly is not, as the District Court interpreted it, a prohibition against every Federal action which might have an impact on the operation of a hospital. Instead, it merely bars attempts of federal officers to interfere with the daily administration of the hospitals in areas not specifically dealt with in the Act. To read the provision more broadly, as the appellees contend, would defeat the salutary purposes of the Act." 458 F.2d 1119.

is, Administrative Law Treatise § 28.16. But "judicial review of a final agency action by an aggrieved person will not be cut off unless there is persuasive reason to believe that such was the purpose of Congress." Abbott Laboratories v. Gardner, 1967, 387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed.2d 681. Inaction is the source of plaintiffs' complaint here, and nothing in the statute or its legislative history leads the court to believe that Congress intended to block review of the Secretary's failure to act as the Hill-Burton Act arguably requires him to act.[3] The *motion to dismiss* raises only the question whether a suit might be brought on some set of facts, perhaps grievous, that might be proved under the complaint. The conclusion that the complaint states a claim for which relief might, at least under some facts that the plaintiffs could adduce, be granted, does not of course mean that the relief sought will be finally determined to be appropriate. On this motion by the defendant to dismiss, it means only that relief is not, as a matter of law, foreclosed.

The only issue remaining, then, is whether or not these plaintiffs have standing to challenge the Secretary's action. Since the plaintiffs, residents of the Parish's West Bank, are before the court as representatives of the class of all persons who will be served by the hospital,[4] it is clear that, if they do not have standing to sue, no one does, and the Secretary's action will go unchallenged.

In Association of Data Processing Service Organizations, Inc. v. Camp, 1970, 397 U.S. 150, 90 S.Ct. 827, 25 L. Ed.2d 184, and Barlow v. Collins, 1970, 397 U.S. 159, 90 S.Ct. 832, 25 L.Ed.2d 192, the Supreme Court articulated a two-part test of standing. Courts are first to determine whether or not the action challenged has caused or will cause the plaintiff to suffer an injury in fact. If he has or will, then he may sue if the interest he seeks to vindicate is one arguably within the zone of interests protected by the Act. See also Sierra Club v. Morton, 1972, 405 U.S. 727, 92 S.Ct. 1361, 31 L.Ed.2d 636; Arnold Tours, Inc. v. Camp, 1970, 400 U.S. 45, 91 S.Ct. 158, 27 L.Ed.2d 179; Hardin v. Kentucky Utilities Co., 1968, 390 U.S. 1, 88 S.Ct. 651, 19 L.Ed. 2d 787; Davis, Administrative Law Treatise, 1970 Supplement § 22.00.

The plaintiffs and the class they represent can show such an injury in this case simply from the failure of the hospital to open, since the hospital never would have received Hill-Burton money unless HEW had determined that the area residents needed its facilities. The

---

3. The act expressly provides, 42 U.S.C. § 291h, for judicial review of the Secretary's refusal to approve an application for funds. The Senate Report on the Hospital and Medical Facilities Amendments of 1964, which revised the original Hill-Burton Act, is silent on the question of judicial review of other matters. It is worth noting, however, that these 1964 Amendments inserted language in § 291i giving the Secretary the right to waive recovery of Hill-Burton funds. The Senate report indicates that this authority is to be used only "for good cause shown," and reflects Congress' understanding that (in 1964) "existing law does not include the authority to waive the right of recovery . . . ." 1964 U.S.Code Cong. & Admin.News at p. 2813.

Inaction, like arbitrary or unauthorized affirmative action, must give rise to a right of judicial review in appropriate cases when, as here, it is the agency's failure to act that causes injury. Any other interpretation of the Administrative Procedure Act would make § 10(e) of the Act, 5 U.S.C. § 706, which empowers a reviewing court to "compel agency action unlawfully withheld or unreasonably delayed," simply meaningless. See International Association of Machinists and Aerospace Workers, AFL–CIO v. National Mediation Board, 1970, 138 U.S.App. D.C. 96, 425 F.2d 527, fn. 3 at 535; Kessler v. F.C.C., 1963, 117 U.S.App.D.C. 130, 326 F.2d 673; Harvey Radio Laboratories v. United States & F.C.C., 1961, 110 U.S.App. D.C. 81, 289 F.2d 458.

4. In a minute entry dated January 2, 1974, the court granted the plaintiffs' motion to maintain this suit as a class action under Rule 23(b)(2) on behalf of all persons within the territorial area to be served by the hospital who are or may be in need of medical care.

plaintiffs seek to vindicate interests evidently protected by the Act; its main purpose is to help localities to construct and operate hospitals, and the plaintiffs ask the Secretary to use his authority to achieve just that result.[5]

The complaint, then, states a cause of action for review of the Secretary of Health, Education and Welfare's exercise of his discretion under the Hill-Burton Act, and the plaintiffs have standing to maintain it.

## II. SUMMARY JUDGMENT

In his motion for summary judgment, the Secretary argues that, on the evidence now before the court, he has not abused his discretion under the Act. The plaintiffs argue simply that an abuse of discretion can be inferred from the undisputed facts of the case. Both parties have now submitted factual material and memoranda supporting their positions, and the court has heard oral argument.

The essential facts surrounding the failure of the hospital to open are not disputed, although the reasons for this failure are. On July 31, 1972 the facility was essentially completed, and the final inspection was performed. On November 6, 1972 the project was approved, and the last payments of Hill-Burton funds were made within a week; Hill-Burton grants, in total, accounted for about two-fifths of the $1,137,000 project. Eighteen months later, the hospital has not opened.

As counsel for the Secretary urges, and no one really disputes, the Department has not been entirely idle. The Region VI PHS/Facilities Planning Office first learned that the hospital was not yet open on March 27, 1973, when it received from Washington a letter sent to the White House by a St. James Parish resident. Five months later, members of the Region VI staff spoke with state authorities, who in turn met with the parochial authorities and reported that the Police Jury was working to solve the problem. The Region VI office then began an inquiry into the reasons for the failure of the hospital to open. The nature of this inquiry is not clear, however, and there is no indication that it is completed or that it has borne fruit. In addition, the Department has offered to assist the local authorities in opening the hospital, and has informed the hospital board of its right to recover Hill-Burton funds in the event of their misuse.

The Secretary argues that he is in good faith attempting to do all he can to resolve this dispute. He points out that 42 U.S.C. § 291m limits the extent to which he may interfere with local administration, and argues that the only explicit remedy the Act provides—suing to recover the Hill-Burton grant—is simply too drastic to use at this time, since it would end all hope of opening the hospital. Because he is doing all he can, he argues, he is entitled to summary judgment.

Even if the court accepts the Secretary's argument that a recovery suit is his only remedy, it does not follow that instituting such a suit will have the catastrophic consequences the Secretary suggests. In the most efficient of courts, some time passes between filing and judgment; judges are normally disposed to let the parties use that time to attempt to work out their differences. Often it is the inexorable march to trial that induces the parties to discuss their mutual problems and to reach an amicable settlement. The prospect of such a disaster as the Secretary foresees, may,

5. In Arnold Tours, Inc. v. Camp, 1970, 400 U.S. 45, 91 S.Ct. 158, 27 L.Ed.2d 179, the Supreme Court held that the second test—whether the interests sought to be vindicated are among those protected by the Act—is not to be applied by searching the legislative history for some indication that these particular plaintiffs were to be protected. The test instead seems to require only a showing that the parties before the court are "arguably within the zone of interests" the Act on its face protects. 400 U.S. at 46, 91 S.Ct. at 158.

when brought home to the state and local authorities, prevent its realization.

In addition, it is possible that the Secretary has an alternative remedy that he has not pursued. In Euresti v. Stenner, *supra,* the Tenth Circuit held that the local officials' application for Hill-Burton funds constituted a contract with the Department, and that the Department had a right to seek enforcement of the assurances given in it. The application involved in this case specifically recognizes the right of the United States to sue to enforce these assurances. Some of them, either taken alone or when read together, constitute an assurance that the local agency will not only construct a hospital but will open and operate it; any other construction of the agreement would frustrate its very purpose.[6] In short, the Secretary of Health, Education and Welfare may have a right to sue for specific performance of the funding agreement. If he or his attorneys are unsure of his rights under the contract, it may well be that the Act imposes upon him an obligation, in this extreme situation, to seek a judicial determination of them.

■ The Secretary has attempted neither of these courses, and he has not justified his conduct in such a way that would at this point entitle him to summary judgment. In the eighteen months that this hospital has been ready for use but remained vacant, the Department has spoken once to the state authorities and initiated an investigation of unknown scope or results.

The court understands that the regional planning office is short-staffed and reluctant to interfere in what they see, perhaps because of the shadow cast by 42 U.S.C. § 291m, as essentially a local matter. But staff problems merely explain inaction, they do not justify it. And 42 U.S.C. § 291m does not limit a court's authority to enforce contract assurances since the Act specifically recognizes them. See Euresti v. Stenner, *supra.*

This is not to say that the court now condemns the Secretary's failure to act. When all the evidence has been heard concerning not only what he has done but also with regard to the conditions in St. James Parish that have prevented the hospital's opening, the court may conclude that he has acted wisely or that his inaction has been within the ambit that Congress delegated. All that we decide now is that the affidavits do not make this claim beyond genuine dispute, and that the Secretary's actions have not been shown to be enough to preclude the entry of judgment for the plaintiffs.

The motion of the Secretary for summary judgment is therefore denied.

---

**6.** Assurance "K" in the application sets out the local authorities' agreement that "sufficient funds will be available when construction is completed to assure effective operation of the facility as approved." Assurance "M" provides that the hospital "will be operated and maintained in accordance with minimum standards prescribed by the State agency for the maintenance and operation of such facilities." Assurance "P" promises that "the facility will furnish a community service and will furnish below cost or without charge a reasonable volume of services to persons unable to pay therefor."

The application also provides as follows (the court's copy is not clear, and illegible portions are bracketed):

THIS ASSURANCE is given in consideration of and for [ ] all Federal grants, loans, contracts, property, discounts or other Federal financial assistance extended after the date hereof to the Applicant by the Department, including installment payments after such date on account of applications for Federal financial assistance which were approved before such date. The Applicant recognizes [ ] that such Federal financial assistance [ ] be extended in reliance on the representations and agreements [ ], and that the United States [ ] have the right to seek judicial enforcement of this assurance.