YALE-NEW HAVEN HOSPITAL *v.* WALTER MATTHEWS ET AL.

APPELLATE DIVISION OF THE COURT OF COMMON PLEAS

FILE No. CV 6-715-51502

Argued September 10—decided November 25, 1974

*Frank B. Cochran,* for the appellants (defendants).

*Jeremy G. Zimmermann,* for the appellee (plaintiff).

O'Brien, J. In this action brought by the plaintiff to collect a hospital bill allegedly due from the defendants, two special defenses were put forward by the defendants. The first concerned the alleged failure on the part of the plaintiff to bill the state welfare department under Title XIX of the Social Security Act although it had knowledge that the defendants were eligible therefor. 79 Stat. 343, as amended, 42 U.S.C. §§ 1396–1396i (Sup. III, 1973). The second special defense alleged that the plaintiff is the recipient of federal funds under the Hill-Burton Act; 60 Stat. 1040; 42 U.S.C. §§ 291–291o-1 (1970); (hereinafter sometimes referred to as Hill-Burton) and raised in essence the issue of whether the provision of that act that federally-funded hospitals must provide a reasonable volume of services to persons unable to pay therefor acts as a defense in a suit by a hospital for payment for services rendered to such a person. 60 Stat. 1040; 42 U.S.C. § 291c (e) (2) (1970). The trial court (*Bernstein, J.*) sustained the plaintiff's demurrer to the second special defense. Thereafter the defendants repleaded in greater detail but essentially the same defense and added a third special defense setting forth Public Health Services' proposed regulations regarding the plaintiff's obligations under the Hill-

Burton Act. They also filed a counterclaim seeking a declaratory judgment that the operation of the plaintiff fails to comply with the Hill-Burton Act and constitutes a public nuisance due to its failure to provide a reasonable volume of services free or below costs. Incidental thereto, the defendants seek $250 damages and attorneys' fees.

The plaintiff then moved to expunge the second and third special defenses as being repetitious. That motion was granted, and the counterclaim was, on motion of the plaintiff, erased. The plaintiff then moved for summary judgment, and that motion was granted by the court (*Adorno, J.*). Judgment was entered in favor of the plaintiff to recover of the defendants $567.40 plus its costs which were taxed at $26.90. From that judgment, the instant appeal has been filed. The defendants have addressed themselves to the rulings by the trial court in sustaining the demurrer to the second special defense, in granting the motion to expunge the repleaded second special defense and the third special defense, in granting the motion to erase the counterclaim, and in entering summary judgment confirming the previous rulings set forth above.

In the assignments of error alluded to above, no mention was made of the procedural irregularity in the granting of the motion for summary judgment before the pleadings were closed. Practice Book § 298 provides that "[i]n any action, . . . after the pleadings have been closed, any party may move for a summary judgment." The defendants apparently waived any argument regarding the validity of their position in the first special defense by not contesting that issue at the trial court level. Because the question was not raised in or decided by the trial court, we decline to consider it. Practice Book §§ 223, 652; *Hartmann* v. *Smith,* 158 Conn. 613.

The plaintiff's demurrer to the second special defense must, in accordance with our practice, admit all facts well pleaded. *Stamford Dock & Realty Corporation* v. *Stamford,* 124 Conn. 341. For the purposes of that demurrer, it must be assumed that the plaintiff is a recipient of Hill-Burton funds and had failed to provide a certain percentage of its services free of charge to those unable to pay therefor and that the defendants received services for which they were unable to pay. The plaintiff argues that even if those facts are true, such a defense is legally insufficient because the defendants had no standing in the defense of this lawsuit to challenge the plaintiff's performance under the Hill-Burton Act. With that contention, we agree.

The Hill-Burton Act was enacted in August, 1946. Its purposes are quoted in a footnote.[1] To carry out those purposes, 42 U.S.C. § 291a (1970) appropriates sums of money to be paid to states which submit acceptable plans to the surgeon general for the construction and modernization of hospitals and other medical facilities. Other sections of the act set forth the requirements which a state application must fulfil in order to be accepted.

---

[1] "[60 Stat. 1040; 42 U.S.C. § 291 (1970)] CONGRESSIONAL DECLARATION OF PURPOSE. The purpose of this subchapter is—(a) to assist the several States in the carrying out of their programs for the construction and modernization of such public or other nonprofit community hospitals and other medical facilities as may be necessary, in conjunction with existing facilities, to furnish adequate hospital, clinic, or similar services to all their people; (b) to stimulate the development of new or improved types of physical facilities for medical, diagnostic, preventive, treatment, or rehabilitative services; and (c) to promote research, experiments, and demonstrations relating to the effective development and utilization of hospital, clinic, or similar services, facilities, and resources, and to promote the coordination of such research, experiments, and demonstrations and the useful application of their results."

Pursuant to the provisions of the Hill-Burton Act, the surgeon general issued a regulation which was in force when this action was commenced. That regulation appears, in part, in a footnote.[2]

Neither the Hill-Burton Act nor any regulation promulgated thereunder contains any express authority giving legal standing to nongovernmental parties who would seek to enforce a hospital's obligation to provide a "reasonable volume" of services to those "unable to pay therefor."

A review of federal decisions since the enactment of the Hill-Burton Act supports the proposition that although there was no express creation of a private civil remedy in the act, such a remedy could be implied. See *Euresti* v. *Stenner*, 458 F.2d 1115; *Corum* v. *Beth Israel Medical Center*, 359 F. Sup. 909; *Organized Migrants in Community Action, Inc.* v. *James Archer Smith Hospital*, 325 F. Sup. 268; *Cook* v. *Ochsner Foundation Hospital*, 319 F. Sup. 603; but see *Stanturf* v. *Sipes*, 224 F. Sup. 883. *Cook* v. *Ochsner Foundation Hospital*, supra, 606,

---

[2] "[42 C.F.R. § 53.111 (1972)] COMMUNITY SERVICE; SERVICES FOR PERSONS UNABLE TO PAY; NONDISCRIMINATION ON ACCOUNT OF CREED. Before an application for the construction of a hospital or medical facility is recommended by a State agency for approval, the State agency shall obtain assurances . . . that . . . (b) [t]he facility will furnish below cost or without charge a reasonable volume of services to persons unable to pay therefor. As used in this paragraph, "persons unable to pay therefor" includes persons who are otherwise self-supporting but are unable to pay the full cost of needed services. Such services may be paid for wholly or partly out of public funds or contributions of individuals and private and charitable organizations such as community chest or may be contributed at the expense of the facility itself. In determining what constitutes a reasonable volume of services to persons unable to pay therefor, there shall be considered conditions in the area to be served by the applicant, including the amount of such services that may be available otherwise than through the applicant. The requirements of assurance from the applicant may be waived if the applicant demonstrates to the satisfaction of the State agency, subject to subsequent approval by the Secretary that to furnish such services is not feasible financially . . . ."

held that "the Hill-Burton Act is designed, at least in part, to benefit persons unable to pay for medical services. Such people are not the sole beneficiaries of the act, but they certainly are the object of much of the act's concern."

*New York City Coalition for Community Health* v. *Lindsay,* 362 F. Sup. 434, 441, found sufficient standing to enable the plaintiff to invoke federal jurisdiction. It held that standing does not focus on issues but on the party seeking to get his complaint before a federal court. *Flast* v. *Cohen,* 392 U.S. 83, 99. The standing of the plaintiff was based on a three-pronged formula involving (1) a personal status and interest that imparts the concrete adverseness required, (2) being within the zone of interests covered by the act, and (3) no exclusion of judicial review by the act.

All the cases brought to our attention by counsel or our own research involve the question of standing of nongovernmental plaintiffs in class action suits to compel compliance with the provisions of the Hill-Burton Act. No case has been cited, nor have we found any which holds that a private party has the individual right to enforce commitments made by a hospital to either the state or federal government. Even if it were assumed that private parties might have standing as interested plaintiffs to enforce obligations under Hill-Burton, it does not logically follow that former patient defendants in a collection action by a hospital for services previously rendered have the right to refuse payment of a hospital bill because of the alleged failure of the hospital to comply with its Hill-Burton obligations. There is no authority for such an implied sanction. To allow such a defense would introduce into every hospital collection case, in addition to the usual issues such as the rendition of the services in ques-

tion, the reasonableness of the charges, the liability cf the defendant for the particular services rendered, such varied and collateral issues as the efforts of the hospital to provide a reasonable volume of below cost or free medical services, the economic conditions of the area served by the hospital, contributions from charitable corporations, the budget of the hospital, the determination of the class to be benefited by Hill-Burton funds, and whether the defendant as a member of the "working poor" was qualified for inclusion at the time of the rendition of the services. Also the defendant would be required to show the failure of the hospital on any given date to provide a sufficient percentage of care mandated by the act. It cannot reasonably be said that the act ever implied the creation of such a right in an individual defendant as a defense in an action similar to that involved herein.

We are not unmindful that in *Gonzales* v. *Personal Collection Service,* 494 P.2d 201 (Wyo.), in an action by an assignee to recover on accounts due a county memorial hospital, the court allowed an affirmative defense to the collection of the hospital bill. There a state statute provided that a county memorial hospital established and maintained under the statute shall be kept and maintained as a public hospital. "It . . . shall furnish free to such persons being resident of the county as have no means to pay for the same all necessary facilities and maintenance during the time that such persons without means may be required to remain there for proper treatment . . . ." Wyo. Stat. Ann. § 18-320 (1957). The court allowed the facts encompassed by the statute to be pleaded as an affirmative defense and held that the burden of proof on an affirmative defense for one who asserts an exception is on the party asserting the same. Such a defense is spelled out in the statute and is properly

allowable under state law. We conclude, never-theless, that Hill-Burton furnishes no parallel direction which would form the basis for an individual nonclass defense.

For the reasons stated above, we hold that the demurrer was properly sustained.

On the issue of the expunging of the repleaded special defense, it must be noted that the new special defenses were based upon the plaintiff's alleged failure to fulfil its Hill-Burton obligations. After a demurrer has been sustained, any attempt to replead a cause of action or a defense "must avoid the defect which caused the demurrer to be sustained or it can be expunged on motion." 1 Stephenson, Conn. Civ. Proc. (2d Ed.) § 119, p. 490. The ruling on the demurrer is the law of the case and may only be tested on appeal. *Kelly* v. *Waterbury,* 96 Conn. 494, 496. An examination of the repleaded special defense and the defendants' argument opposing the motion to expunge leads us to the conclusion that the special defenses were essentially similar to the one previously demurred to, and we therefore find no error in the expunging of them.

On the counterclaim, which primarily seeks a declaratory judgment from the Circuit Court, the plaintiff contends that it was jurisdictionally defective. Connecticut courts do not have inherent power to render declaratory judgments. *Ackerman* v. *Union & New Haven Trust Co.,* 91 Conn. 500. That power is given to the Superior Court and the Court of Common Pleas. General Statutes § 52-29. The Circuit Court has no power to render a declaratory judgment. *Spencer* v. *Marshall,* 3 Conn. Cir. Ct. 516. The addition of a claim for incidental damages and attorneys' fees supplemental to the claim for declaratory judgment relief does not change the essential nature of the cause of action. *Berry* v.

*Hartford National Bank & Trust Co.,* 125 Conn. 615, 618; see also *United States Fidelity & Guaranty Co.* v. *Spring Brook Dairy,* 135 Conn. 294, 299.

For all of the foregoing reasons, the judgment appealed from must be affirmed.

There is no error.

In this opinion HAMILL, J., concurred.

SPONZO, J. (dissenting in part). The plaintiff's demurrer to the defendants' second special defense under the Hill-Burton Act should have been overruled.

The initial question with respect to the demurrer is whether the defendants have standing to raise as a defense the Hill-Burton Act provision that "there will be made available in the facility or portion thereof [of a hospital or other medical facility] to be constructed or modernized a reasonable volume of services to persons unable to pay therefor." 42 U.S.C. § 291c (e) (2) (1970). The type of standing to be considered is standing to raise an issue rather than standing to be a party, which the defendants, as potential debtors in an action for payment for services, certainly have.

The standing of the defendants to raise that issue can be compared to that of defendants who raise federal constitutional issues. "It is fundamental that no one will be heard to question the constitutionality of a statute unless he is adversely affected by it." *State* v. *Hurliman,* 143 Conn. 502, 506; *State* v. *Donahue,* 141 Conn. 656, 665. The defendants in this case, claiming that a federal statutory defense negates the usual common-law duty to pay for hospital services, will certainly be adversely affected monetarily if they have to pay this hospital bill. Therefore, they have standing to raise the Hill-Burton Act provision on services to the poor.

The second and primary issue is whether the Hill-Burton Act provision cited above and its accompanying regulation actually constitute a defense for an individual in an action by a hospital receiving Hill-Burton Act funds for payment for services rendered. Before that question is fully addressed, the Hill-Burton Act should be described. Under the act, federal funds are allotted to the states in order to assist them, inter alia, in carrying out their programs for the construction and modernization of hospitals and other medical facilities. Any state desiring to participate in the federal program may submit a state plan, which must designate a state agency as the sole agency for administering the plan. In order to receive Hill-Burton funds, a state must comply with certain general regulations prescribed by the surgeon general. 42 U.S.C. § 291c (e) (1970) is quoted, in part, in a footnote.[1] Pursuant to that statutory provision, a regulation, 42 C.F.R. § 53.111 (b) (1972), set out in the majority opinion, was promulgated. That regulation was in effect at the time of the rendition of hospital service in this case.

The question whether the statutory provision and regulation above constitute a defense for an indi-

---

[1] "[60 Stat. 1040; 42 U.S.C. § 291c (1970)] GENERAL REGULATIONS. The Surgeon General, with the approval of the Federal Hospital Council and the Secretary of Health, Education, and Welfare, shall by general regulations prescribe— (e) that the State plan shall provide for adequate hospitals, and other facilities for which aid under this part is available, for all persons residing in the State, and adequate hospitals (and such other facilities) to furnish needed services for persons unable to pay therefor. Such regulations may also require that before approval of an application for a project is recommended by a State agency to the Surgeon General for approval under this part, assurance shall be received by the State from the applicant that . . . (2) *there will be made available in the facility or portion thereof to be constructed or modernized a reasonable volume of services to persons unable to pay therefor, but an exception shall be made if such a requirement is not feasible from a financial viewpoint.*" (Italics supplied.)

vidual who is a person unable to pay in an action by a hospital for the payment of a bill is one of first impression, deserving of careful and thorough study and deliberation. I am aided in that task by a number of recent federal court cases interpreting the provision and regulation which are not exactly on point but which do reveal the thrust of the law in that area.

In *Cook* v. *Ochsner Foundation Hospital*, 319 F. Sup. 603, the plaintiffs sought in a class action to compel the defendant hospitals to provide a reasonable volume of services to persons unable to pay therefor. The court held that a private civil action may be implied under the Hill-Burton Act. It rested its conclusion on *Gomez* v. *Florida State Employment Service*, 417 F.2d 569. In that case twenty-nine migrant workers sued as individuals to obtain relief from injuries suffered as a result of alleged violation by their employer of housing and minimum wage regulations promulgated under the Wagner-Peyser Act, 48 Stat. 113; 29 U.S.C. §§ 49–49K (1970). That act establishes the United States Employment Service and provides funds for state employment agencies, which must comply with regulations issued pursuant to that act. As with the Hill-Burton Act, the Wagner-Peyser Act contains no provision for an action by a private individual to obtain relief under the statute. The court in *Gomez* implied, however, a private civil action by migratory farm workers under the act in order to effectuate the purpose of the statute and regulation, i.e., the protection of migrant farm workers.

The court in *Cook* found that the Hill-Burton Act and the Wagner-Peyser Act were similar in that both did not expressly authorize "civil actions by private individuals to enforce their provisions" but provided for the allotting of federal appropriations

to state agencies on the condition that the states undertake certain obligations. *Cook* v. *Ochsner Foundation Hospital*, supra, 606. The court extended the reasoning of *Gomez* in these words: "In the case at bar, we hold that the Hill-Burton Act is designed, at least in part, to benefit persons unable to pay for medical services. Such people are not the sole beneficiaries of the act, but they certainly are the object of much of the act's concern. . . . [W]e are of the opinion that the act, by its own terms, makes it plain that persons unable to pay for medical services are one of the chief sets of beneficiaries of this legislation. It is a matter of the clearest logic that the only real beneficiaries of a hospital program are the people who need or may need medical treatment. This includes people of all classes, whether rich or poor."

On the basis of *Cook*, the court in *Organized Migrants in Community Action, Inc.* v. *James Archer Smith Hospital*, 325 F. Sup. 268, 271, also held that "plaintiffs have a private right of action under the provisions of the Hill-Burton Act." The same conclusion was reached in *Euresti* v. *Stenner*, 458 F.2d 1115, 1118, where the court declared: "Thus the legislative history and the expressed purposes of Congress indicate that the Act was passed to ensure that the indigent would be supplied sufficient hospital services when needed. With this clear intent, it is not decisive that the language of the Act included no explicit indication that indigents were to have a right to enforce the Act's provisions. A civil remedy may be implied for those clearly within the protective realm of legislation or regulations in the public interest."

What the defendants in the instant case request is that the reasoning of *Cook, Organized Migrants in Community Action, Inc.*, and *Euresti* be brought

a step further to allow a defense based on the Hill-Burton Act. The crux of the issue is not, however, whether the procedural mechanism of a defense should be allowed but whether the Hill-Burton Act confers an individual right on a member of the benefited class, i.e., "persons unable to pay therefor [for hospital services]," to receive free or below cost hospital services. It is contended that in the cases cited above, class actions were brought for declaratory and injunctive relief to enforce a program of free or below cost hospital services for the class of poor people and that, in light of the provision that only a reasonable volume of services is to be supplied, no single indigent individual has a right, personal to himself, to obtain such services. For example, if an indigent individual were treated by a hospital at the end of the year when the hospital had already provided a reasonable volume of services to the poor, that individual could not claim any benefits. That is conceded, but it does not justify the proposition that the indigent has no individual right under the act. A poor person could just as easily be a patient at the beginning of the year when a reasonable volume of services had not already been provided. He should be entitled to prove that the hospital was required to provide such services to him, even though it did not have to provide them to another indigent.

Furthermore, the defendants in this case have rights to free or below cost services as third party beneficiaries of the contract, incorporating the federal statutory obligations, between the hospital and the state, which in turn is obligated to assure compliance in return for federal funds. *Euresti* v. *Stenner,* supra, 1118; *Corum* v. *Beth Israel Medical Center,* 359 F. Sup. 909, 913. As the court in *Euresti* states: "Nothing could be clearer: In receiving federal funds, appellees [the administrators of the

hospital] obligated themselves to dispense a reasonable amount of free hospital services to those unable to pay." Since the indigents are characterized as third party beneficiaries of the contract between the hospital and the state, they certainly have individual rights to free or below cost hospital services, subject to the conditions stated above, for the essence of third party beneficiary status is that the promisor (in this case the hospital) assumes a direct obligation to the third party. *Knapp* v. *New Haven Road Construction Co.,* 150 Conn. 321, 325; *Congress & Daggett, Inc.* v. *Seamless Rubber Co.,* 145 Conn. 318, 324.

Now that it has been established that 42 U.S.C. § 291c (e) (1970) and 42 C.F.R. § 53.111 (b) (1972) secure for persons unable to pay individual, albeit limited, rights to free or below cost hospital services, it is not difficult to show that the defendants in this case should be allowed to interpose a defense based on those statutory and regulatory provisions in this action by the hospital for payment of its bill. The other Hill-Burton Act cases did involve requests for declaratory and injunctive relief, but it would be absurd to limit the holdings of those cases to the idea that only those types of relief are permissible, when those cases do not do so. As in *Gomez* v. *Florida State Employment Service,* supra, which discussed money damages and other forms of relief, the most appropriate form of relief should be applied in this case.

A special defense would be the most effective and appropriate form of relief. The Hill-Burton Act beneficiary, by means of a defense in a collection suit, will be able to assert his rights in the context of a dispute which then and there affects his economic interests. He should not be requested to use the more cumbersome procedure of a class action

seeking declaratory and injunctive relief before he asserts his legal rights. It is true that such a defense is novel, but "[a]n action or defense, although one of first impression, may be maintained if, under any recognized principle of law, the facts involved constitute a violation of a legal right." 1 C.J.S., Actions, § 16.

To disallow the special defense interposed by the defendants in this case would permit a subversion of the legislative pattern of the Hill-Burton Act. The holdings of *Cook, Organized Migrants in Community Action, Inc.,* and *Euresti,* which implied a cause of action under the Hill-Burton Act for "persons unable to pay" for hospital services, should be extended to allow a defense based on the act to those persons in actions by funded hospitals and other facilities for services rendered.

For the reasons stated above, the plaintiff's demurrer to the defendants' second special defense should have been overruled. I concur, however, with the majority opinion with respect to its conclusions on the waiver of the defect in the summary judgment, the motion to expunge, and the motion to erase.