165 N.J. Super. 482 (1979)
398 A.2d 606
COOPER MEDICAL CENTER, PLAINTIFF,
v.
RICHARD JOYNER, DEFENDANT.
Superior Court of New Jersey, Law Division.
Decided January 22, 1979.
*483 Ms. Francine I. Axelrad for plaintiff (Messrs. Greenberg, Shmerelson, Greenberg & Weinroth, attorneys).
Mr. Brian S. O'Malley for defendant (Camden Regional Legal Services, Inc., attorneys).
ROSSETTI, J.S.C.
This is defendant's motion to vacate a default judgment entered for the cost of medical services furnished defendant. The "meritorious defense," Marder v. Realty Constr. Co., 84 N.J. Super. 313, 318 (App. Div. 1964), aff'd 43 N.J. 508 (1964), alleged by defendant is plaintiff hospital's failure to comply with the Hill-Burton Act, the "Public Service Health Act," 42 U.S.C.A. § 291 et seq., reenacted by Congress as the National Health Planning and Resource Development Act of 1974, 42 U.S.C.A. § 300k et seq., in furnishing free or below costs medical services to certain indigent beneficiaries of that act. Neither the Hill-Burton Act nor any regulations promulgated thereunder contain any express authority which would give a defendant standing to raise the hospital's failure to comply with the Hill-Burton Act as a defense to the hospital debt. This court has found no New Jersey or federal court case which has treated this specific issue.
The Hill-Burton Act was enacted for the purpose of assisting the states in implementing programs for the construction and/or modernization of medical facilities in order to furnish adequate hospital and medical services to all the *484 people. 42 U.S.C.A. § 291 (1970). To carry out its purpose, Congress has appropriated sums of money to be paid to states which submitted acceptable plans for construction. 42 U.S.C.A. § 291(a) (1970).
The act does not specifically establish a cause of action for nongovernmental parties who seek to enforce a hospital's obligation to provide a "reasonable volume" of services to those "unable to pay therefor." 42 U.S.C.A. § 291e.
This court has concluded that Congress did not intend to foster compliance or enforce the provisions of the Hill-Burton Act by establishing a violation as a defense to a hospital's suit for medical services rendered.
The Hill-Burton Act by its terms has entrusted the Secretary of the Department of Health, Education and Welfare (hereinafter "Secretary") with the responsibility and authority to carry out the purposes and intent of the act, and has given specific powers to the Secretary in that regard. 42 U.S.C.A. § 300p-2(c).
Extensive federal regulations have been implemented to establish the machinery and procedure for the enforcement of and compliance with the provisions of the Hill-Burton Act. 42 C.F.R. § 53.111 et seq.
A further method of enforcement of the act has been entrusted to the states, 42 C.F.R. § 53.111(j), including effective sanctions which may be invoked by the states for the failure of a hospital facility to furnish the appropriate medical services. These sanctions may include, but need not be limited to, license revocation, termination of state assistance and court action.[1]
*485 Clearly, Congress and the Secretary have made ample provision for the enforcement of the act. There is no necessity for this court to fashion a civil remedy in order to compel compliance by a particular medical facility. If the intent of Congress or the Secretary was to grant such an extraordinary civil remedy it would have been indicated in the enforcement provisions of the act and the regulations.
Some federal courts have allowed actions by nongovernmental entities to compel compliance. Most of these actions were class actions brought by the beneficiaries. Cook v. Ochsner Foundation Hosp., 319 F. Supp. 603 (E.D. La. 1970), aff'd 559 F.2d 968 (5 Cir.1977), and 61 F.R.D. 354 (E.D. La. 1972); Gordon v. Forsyth Cty. Hosp. Auth., Inc., 409 F. Supp. 708 (M.D.N.C. 1976), aff'd in part, vacated in part on other grounds, remanding individual plaintiff's claims upon stipulation of exhaustion of administrative remedies pending appeal, 544 F.2d 748 (4 Cir.1976); Poirrier v. St. James Parish Policy Jury, 372 F. Supp. 1021 (E.D. La. 1974), aff'd 531 F.2d 316 (5 Cir.1976), reh. den. 537 F.2d 840 (5th Cir.1976); National Ass'n of Neighborhood Health Centers, Inc. v. Mathews, 179 U.S. App. D.C. 135, 551 F.2d 321 (D.C. Cir.1976) held that a national organization has standing under Administrative Procedure Act, 5 U.S.C.A. § 702, to challenge H.E.W. administrative designations under the Hill-Burton Act; Euresti v. Stenner, 458 F.2d 1115 (10 Cir.1972), reh. den. (10 Cir.1972); Newsom v. Vanderbilt Univ., 453 F. Supp. 401 (M.D. Tenn. 1978); Corum v. Beth Israel Medical Center, 359 F. Supp. 909 (S.D.N.Y. 1973); Organized Migrants in Community Action, Inc. v. James Archer Smith Hosp., 325 F. Supp. 268 (S.D. Fla. 1971). One court permitted an action for damages for the failure of a hospital to provide *486 medical services where it was coupled with an action for injunctive relief. Saine v. Hospital Auth. of Hall Cty., 502 F.2d 1033 (5 Cir.1974). None, however, has permitted the lack of compliance to be raised as a defense to the underlying medical debt.
The Appellate Division of the Court of Common Pleas for the State of Connecticut has specifically held that patients could not raise the hospital's alleged noncompliance with the Hill-Burton Act as a special defense in a collection action for services rendered. The holding of that court is not binding on the courts of this State, but the rationale of its opinion is persuasive and a valid decision of the issue. The court said:
* * * To allow such a defense would introduce into every hospital collection case, in addition to the usual issues such as the rendition of the services in question, the reasonableness of the charges, the liability of the defendant for the particular services rendered, such varied and collateral issues as the efforts of the hospital to provide a reasonable volume of below cost or free medical services, the economic conditions of the area served by the hospital, contributions from charitable corporations, the budget of the hospital, the determination of the class to be benefited by Hill-Burton funds, and whether the defendant as a member of the `working poor' was qualified for inclusion at the time of the rendition of the services. Also the defendant would be required to show the failure of the hospital on any given date to provide a sufficient percentage of care mandated by the act. It cannot reasonably be said that the act ever implied the creation of such a right in an individual defendant as a defense in an action similar to that involved herein. [Yale-New Haven Hosp. v. Matthews, 32 Conn. Sup. 539, 545, 343 A.2d 661, 664-665 (1974), certif. den. 164 Conn. 694 (Sup. Ct. Cir.1975), cert. den. 423 U.S. 1024, 96 S.Ct. 467, 46 L.Ed.2d 398 (1975)]
Although the regulations considered by the Yale-New Haven Court have been modified since that opinion, the considerations remain substantially the same and extremely burdensome with respect to proof of compliance.[2] More *487 recently, the Court of Appeals of Oregon reached the same conclusion, relying upon Yale-New Haven Hosp. v. Matthews, supra, in Valley Credit Service, Inc. v. Mair, 35 Or. App. 637, 582 P.2d 47 (1978). A certain expertise is required for the consideration of these matters and for that reason the Secretary was entrusted with the responsibility of interpretation and enforcement. The state trial courts would be without the experience to interpret and apply the federal regulations, Congress must have been mindful of the required administrative expertise.
It is the opinion of this court that to permit a defendant to raise noncompliance as a defense would create varied adjudications and interpretations of the very complicated implementing regulations of the Hill-Burton Act from numerous jurisdictions throughout the United States. Clearly, if such a method of enforcement is to be employed, it must be mandated by the Congress and should not be fashioned by the judiciary.
*488 Assuming, arguendo, there was such a civil remedy available, this defendant has totally failed to exhaust his administrative remedies. There is no indication before this court that any remedies available through the New Jersey State Department of Health have been employed. See n. 1, supra. The specific provisions of the statute requiring exhaustion of administrative remedies at the federal level have not been complied with. 42 U.S.C.A. § 300p-2(c), "Investigation of recipients for compliance with assurances; remedies available for finding of noncompliance." Therefore, even if this defendant had an individual cause of action he has failed to exhaust his administrative remedies.
In summary, there is no basis for a congressional intent to permit the defense sought by this defendant, and for this court to fashion such a remedy would create a multiplicity of complicated adjudications that would be inappropriate to effectuate the purposes of the Hill-Burton Act. Accordingly, because defendant has no defense to the complaint, the motion to vacate the judgment is denied.
NOTES
[1] An independent inquiry made by this court at the New Jersey State Department of Health has indicated that the Health Facilities Construction and Monitoring Program of the State of New Jersey receives complaints of Hill-Burton violations from a variety of interested sources. This unit makes the annual evaluation of level of compliance of Hill-Burton facilities and investigates individual complaints of noncompliance. Where a hospital is found to be in noncompliance the matter may be referred to the licensing or rate setting sections of the State Department of Health for effective sanctions. The matter may also be referred to the Health Resource Development section of the Federal Department of Health, Education and Welfare for Region II.
[2] Determination of a facility's compliance with the general goals of the Hill-Burton Act involves a step-by-step application of over five pages of detailed federal regulations. 42 C.F.R. § 53.111 et seq. In an annual review of a hospital's compliance with its assurance to the State Department of Health, the state agency in charge of administering federally dispersed funds must make a determination of the amount of "uncompensated services" a hospital is providing to Hill-Burton beneficiaries. 42 C.F.R. § 53.111(c)-(f). The determination of the amount of uncompensated services provided includes in the calculation some services and not others. Also excluded are amounts a patient may be entitled to receive under third-party insurance or other governmental aide programs. The determination of which patients are deemed "persons unable to pay for services" involves the application of identifying criteria set forth in the state agency plan. Not all indigent patients are Hill-Burton beneficiaries nor are all the hospital services rendered covered by Hill-Burton. Further, the State Department of Health establishes a "level of uncompensated services" for each facility for each fiscal year which must be met for a hospital to be considered in compliance with Hill-Burton. 42 C.F.R. § 53.111(b). This determination of what a "reasonable volume of services to persons unable to pay therefor" should constitute for each facility is a many-tiered administrative decision potentially involving public objections, open administrative hearings and review by the Secretary of Health, Education and Welfare. 42 C.F.R. § 53.111(h).