524 P.2d 1055

Eugene L. BUSH, for himself and for all other subscribers to the service of the Upper Valley Telecable Co., Plaintiff-Appellant,

v.

UPPER VALLEY TELECABLE CO., a corporation, and the City of Idaho Falls, Idaho, a municipal corporation, Defendants,

Upper Valley Telecable Co., a corporation, Defendant-Respondent.

No. 11192.

Supreme Court of Idaho.

July 25, 1973.

On Rehearing July 22, 1974.

Eugene L. Bush, Sharp, Anderson & Bush, Idaho Falls, for plaintiff-appellant.

Terry L. Crapo, Holden, Holden, Kidwell, Hahn & Crapo, Idaho Falls, for respondent.

Albaugh, Bloem, Smith & Pike, Idaho Falls, for defendant City of Idaho Falls.

SHEPARD, Justice.

Plaintiff-Appellant Bush brought this action for damages for the violation of a rate schedule for cable television service. The City of Idaho Falls passed an ordinance granting Defendant-Respondent Upper Valley Telecable Co. a cable television franchise. The ordinance also set forth and adopted a rate schedule. Bush brought suit on behalf of himself and all other cable television subscribers. Following trial to the court, judgment was entered for Upper Valley. We reverse.

In June, 1969, the City of Idaho Falls adopted Ordinance No. 1247 granting Upper Valley a cable television franchise. In Section 12 thereof dealing with rates, it is provided:

> "The rates and charges for television and radio signals distributed by the Grantee shall be fair and reasonable. Grantee shall file a schedule of its rates with the City Clerk of the City and shall make no adjustments or changes in rates until sixty (60) days after the filing of a new rate schedule with the City Clerk at which time such rates shall become effective. All customers' service contracts and subscriptions for services shall be in writing, which contract shall clearly express the term of the contract, the rates to be charged, the installation fees and all other terms and provisions relevant to such contract. Sample copies of all contracts in use by Grantee shall be promptly filed with the City Clerk before being used within the City limits."
> (Emphasis supplied)

Pursuant thereto a rate schedule was filed by Upper Valley providing for two types of service at different rates. "Full service" provided certain television programs, and among others included programming from an "independent" station at Denver, Colorado, and an "independent" station at Lethbridge, Alberta, Canada. The charge for such "full service" was to be $5.75 per month.

The rate schedule also provided for "partial service" at the lesser charge of $4.75 per month. That "partial service" was to include some of the television programming to be provided under the "full service" schedule but would not include programming from the "independent" stations.

On December 8, 1970, approximately one week prior to the intended commencement of the service, representatives of Upper Valley met informally with certain city officials. Upper Valley informed those officials that because of technical difficulties and a lack of Federal Communications Commission approval programming from the "independent" Denver and Lethbridge stations could not be provided. Upper Valley indicated that in lieu thereof it would furnish additional programming from two Salt Lake City stations. No new or amended rate schedule to reflect those changes was filed in accordance with Ordinance No. 1247, *supra*. Upper Valley commenced its service on December 15, 1970 and thereafter charged all of its subscribers the "full service" rate of $5.75 per month.

Upper Valley obtained 350 subscribers in early 1971, and that number of persons increased to approximately 4,500 by mid-1971. All of those subscribers were charged $5.75 per month. Bush filed this action on May 25, 1971 on behalf of himself and all other subscribers seeking to recover damages of $1 per subscriber per month. On May 26, 1971 Upper Valley filed a new rate schedule which became effective July 26, 1971. Plaintiff's damages were limited to the period December 15, 1970 through July 26, 1971.

The issue presented is whether a cable television subscriber may recover damages for rates charged in excess of a rate schedule adopted as part of an ordinance granting a cable television franchise. A subsidiary issue arises from Bush's contention that he is entitled to bring his suit for damages as a class action.

On the merits, the district court ruled that Bush could not "collaterally" attack rates charged in excess of the rate schedule. The district court held that Bush had not exhausted his administrative remedies; that Bush could not maintain the action because the city had waived strict compliance with the franchise ordinance; and the trial court further concluded that the city had accepted substantial performance by Upper Valley.

■ A contract was formed between Upper Valley and the City of Idaho Falls when Upper Valley accepted the franchise. *See* Rhyne, Municipal Law, § 24–4, pp. 510–511 (1957). The terms of that contract are Ordinance No. 1247 and its accompanying rate schedule. Even a cursory examination of the ordinance and the rate schedule reveals the city's intent to benefit a limited well defined class of people: residents of the city who subscribed to the television cable service. It follows that Bush, as a subscriber, was an intended third party beneficiary of the contract between the city and Upper Valley. *See* 2 Williston on Contracts, §§ 347–356A (3d ed. Jaeger ed. 1959); *See also* Restatement (Second) of Contracts, § 133 (Tent.Draft No. 3, 1967).

■ A third party beneficiary may enforce a contract if he is a member of the limited class for whose benefit the contract was made. I.C. § 29–102; Stewart v. Arrington Construction Co., 92 Idaho 526, 446 P.2d 895 (1968). While it follows that Bush then may enforce the franchise contract the question remains as to whether he may recover damages for violation of the franchise rate schedule.

In Pond v. New Rochelle Water Co., 183 N.Y. 330, 76 N.E. 211 (1906) the court

held that a patron of a municipal water franchise might maintain an action against the franchisee. That court stated:

"In the case before us we have a municipality entering into a contract for the benefit of its inhabitants, the object being to supply them with pure and wholesome water at reasonable rates. While there is not presented a domestic relation like that of father and child or husband and wife, yet it cannot be said that this contract was made for the benefit of a stranger. In the case before us the municipality sought to protect its inhabitants, who were at the time of the execution of the contract consumers of water, and those who might thereafter become so, from extortion by a corporation having granted to it a valuable franchise extending over a long period of time. We are of opinion that the complaint states a good cause of action." 76 N.E. at 214.

We see no valid distinction between the instant action for damages and Pond's action for injunctive relief. It appears well settled that Bush, as a third party beneficiary, may bring an action for *either* equitable or legal relief. 4 Corbin on Contracts, § 779K (1951 ed. with 1971 Supp.).

Bush contends that the trial court erred in holding that he had failed to exhaust his administrative remedies. The basis for the trial court's ruling was Bush's failure to present the matter to the City Council. The short answer is that Bush did not have any adequate administrative remedy.

Respondent cites Grever v. Idaho Telephone Co., 94 Idaho 900, 499 P.2d 1256 (1972), which is clearly distinguishable from the instant case. In *Grever* plaintiff sought a writ of mandate to compel the telephone company to furnish service. We pointed out that the legislature has vested the Idaho Public Utilities Commission with the power to supervise and regulate public utilities.

Other authorities cited by respondent involve cases dealing with the reasonableness of rates adopted by a rate-making authority. In such cases the law is clear. For example, the court in St. Paul Book and Stationery Co. v. St. Paul Gaslight Co., 130 Minn. 71, 153 N.W. 262 (1915) stated:

"Rate regulation is justly deemed of great importance in securing to the public cheap, efficient, and impartial service from these corporations, and is undertaken by the government or its agencies. Whether done by the nation, state or municipality, it is by representatives elected by the people and accountable to them. Such being the case, there is little danger of excessive rates being fixed. But if, perchance, it should happen, the remedy of the public is by appeal to the rate-fixing body, or, if necessary, by a change in its membership. If, instead of thus righting the wrong, every consumer is free to seek the injunctional remedies from the courts, no rate schedule would have stability. We know what divergent views consumers have regarding the reasonableness of rates charged by a public service corporation. Every case brought by the individual consumer to test a rate would have to be decided upon the evidence adduced therein. Different cases involving the same rate may have to be determined upon testimony materially unlike, and different judgments result. Neither judges nor juries draw the same conclusion from the same testimony, let alone divergent. Once open the door to actions of this character, and the courts would be kept busy. If a statutory rate can be enjoined by a consumer, it would seem to follow that he may also sue for any amount which he deems he has paid in excess of an alleged reasonable rate. It would be almost certain that no two juries would fix the same amount as the reasonable rate. We think the result of permitting such litigation at the instance of the individual consumer would be utterly destructive of all legislative regulation of public service corporation rates." 153 N.W. at 264.

However, the instant case presents a different situation. Upper Valley contracted

with the city to furnish cable television service of a certain quality at a certain rate. The case at bar is not an attempt to circumvent the city council's authority to establish rates. Rather it is a situation in which one party exceeded the contract rate schedule established and provided less service than the contract required. As a result a third party beneficiary seeks to recover damages for the overcharge.

■ We further note that the Supreme Court of the United States in Smith v. Illinois Bell Telephone Co., 270 U.S. 587, 591, 46 S.Ct. 408, 409, 70 L.Ed. 747 (1962), said:

"For this apparent neglect on the part of the commission, no reason or excuse has been given; and it is just to say that, without explanation, its conduct evinces an entire lack of that acute appreciation of justice which should characterize a tribunal charged with the delicate and important duty of regulating the rates of a public utility with fairness to its patrons, but with a hand quick to preserve it from confiscation."

The court held:

"Property may be as effectively taken by long-continued and unreasonable delay in putting an end to confiscatory rates as by an express affirmance of them . . ."

*See also* Davis, K. C., Administrative Law Text § 20.07, pp. 367–368 (1959). The *Smith* court held that impossibility or improbability of obtaining adequate relief by pursuing administrative remedies is often a reason for dispensing with the exhaustion requirement. We hold that this rationale applies in the case at bar where the city council remained essentially dormant for some 18 months in its neglect and/or refusal to challenge Upper Valley's admitted violation of the rate schedule.

Respondent contends that the city's long silence and inaction constituted a waiver of noncompliance with the franchise ordinance. We do not agree. Upper Valley changed its service without filing a new rate schedule and thus breached its contractual obligations under the franchise ordinance. The district court erred in holding that Upper Valley had not violated the terms of the franchise ordinance.

■ It is obvious that the city would not act to require Upper Valley to perform its contract. Such inaction cannot be held to bar the action of third party beneficiaries. Respondent argues that Upper Valley had provided other programming service in lieu of the two "independent" stations and thus we should sustain the trial court's finding of "substantial performance." The record does not support Upper Valley. Among other programming, three specific television station programmings were to be furnished by Upper Valley for a "full service" rate of $5.75 per month beginning December 15, 1970. Upper Valley did not furnish such programming but continued to charge all its subscribers $5.75 per month. Upper Valley knew of its inability to perform its contract obligation long before December 15, 1970, but not until this action was started did it finally on May 26, 1971, seek a formal change in its rate schedule.

Upper Valley informed the city and its subscribers of the importance of the "independent" station programming. Now Upper Valley asserts that the substitution of three Salt Lake City channels "as a matter of law" constituted "substantial performance" of the franchise agreement. The city did not bargain for such substituted service when it entered into the franchise contract. The subscribers did not bargain for such substituted service. Upper Valley, if it found performance of the contract impossible as it now asserts, had certain alternatives. It could have sought an amendment to its contract. It could have filed a new or amended rate schedule following 60 days notice and the opportunity of subscriber protest thereto. It took neither alternative but instead charged its "full service" rate for which subscribers did not receive the promised "full service." The trial court erred in its finding of substantial performance.

While the trial court's ruling on the merits compels a reversal herein, we nevertheless feel compelled to address the trial court's interpretation of our rules of civil procedure concerning class actions. Bush filed a motion under I.R.C.P. 23(d) asking for notice to all Upper Valley subscribers that they would be bound by the action unless they specifically requested to be excluded. The trial court ruled that because this was a "spurious" class action under I.R.C.P. 23(a)(3), the action would bind only those who expressly opted in by formally joining the suit. The question presented is whether the trial court erred in so interpreting I.R.C.P. 23(a)(3) and I.R.C.P. 23(d).

I.R.C.P. 23(a), as amended, provides:

"Rule 23(a). Class actions—Representation.—In actions wherein persons constituting a class are so numerous as to make it impracticable to bring them all before the court, such of them, one or more, as will fairly insure the adequate representation of all may, on behalf of all, sue or be sued, when the character of the right sought to be enforced for or against the class is

"(1) joint, or common, or secondary in the sense that the owner of a primary right refuses to enforce that right and a member of the class thereby becomes entitled to enforce it;

"(2) several, and the object of the action is the adjudication of claims which do or may affect specific property involved in the action; or

"(3) several, and there is a common question of law or fact affecting the several rights and a common relief is sought."

We agree with the assertion of Upper Valley that I.R.C.P. 23(a) is identical to Fed.R.Civ.P. 23(a)(3) as that rule existed prior to the amendments of 1966. Most commentators believe that the flaws of the pre-1966 federal rule far outweighed its merits. It is arguable that the pre-1966 federal rule had only a limited utility. *See* 3B Moore's Federal Practice, § 23.10(3);

Simeone, J. J., Procedural Problems of Class Suits, 60 Mich.L.Rev. 905 (1962); Kalven & Rosenfield, The Contemporary Function of the Class Action Suit, 8 U. Chi.L.Rev. 684 (1941); Note, Federal Class Action: A Suggested Revision of Rule 23, 46 Col.L.Rev. 818 (1946); Advisory Committee Note to 1966 Amendment, 39 F.R.D. 98 (1966).

We also agree with the assertion of Upper Valley that under almost unanimous authority the pre-1966 Federal Rules of Civil Procedure 23(a)(3) bound only those persons who voluntarily joined the action. *See* Moore's Federal Practice, *supra*, § 23.-11 [3], 23.30.

Nevertheless we, are not compelled to follow the cases thus urged by Upper Valley since other provisions of our rules, specifically I.R.C.P. 23(d), differ substantially from the pre-1966 Federal Rules. I.R.C.P. 23(d) provides:

"Rule 23(d). Orders to insure adequate representation.—The court at any stage of an action under subdivisions (subdivision) (a) of this rule may impose such terms as shall fairly and adequately protect the interests of the persons on whose behalf the action is brought or defended. It may order that notice be given, in such manner as it may direct, of the pendency of the action, of a proposed settlement, of entry of judgment or of any other proceedings in the action, including notice to come in and present claims and defenses. When, notwithstanding such orders, the representation appears to the court inadequate fairly to protect the interests of absent parties, the court may, at any time prior to judgment, order an amendment of the pleadings, eliminating therefrom all reference to representation of the absent parties, and the court may order the entry of judgment in such form as to affect only the parties to the action and those adequately represented."

As noted by the commentators, *supra*, there was considerable dissatisfaction with the pre-1966 federal rule and it was per-

haps a part of that dissatisfaction that prompted Idaho's adoption of I.R.C.P. 23(d).

It is our strong belief that in adopting I.R.C.P. 23(d) Idaho accepted the invitation tendered by the United States Supreme Court in Hansberry v. Lee, 311 U.S. 32, 61 S.Ct. 115, 85 L.Ed. 22 (1940);

> "Nor do we find it necessary for the decision of this case to say that, when the only circumstance defining the class is that the determination of the rights of its members turns upon a single issue of fact or law, a state could not constitutionally adopt a procedure whereby some of the members of the class could stand in judgment for all, provided that the procedure were so devised and applied as to insure that those present are of the same class as those absent and that the litigation is so conducted as to insure the full and fair consideration of the common issue. Compare New England Divisions Case, 261 U.S. 184, 197, 43 S.Ct. 270, 275, 67 L.Ed. 605; Taggart v. Bremner, 7 Cir., 236 F. 544." 311 U.S. at 43, 61 S.Ct. at 119.

 We hold that I.R.C.P. 23(d) establishes a procedure whereby the trial court can and should present absentees with notice that unless they expressly opt out of the litigation they will be bound by the action of those who actively participate. Such notice must be predicated on a finding that those bringing the litigation will adequately represent the interests of the absentees. Our interpretation is in harmony with the 1966 amendments to Federal Rules of Civil Procedure 23. *See* 3B Moore's Federal Practice, *supra*, § 23.02–1, pp. 23–71.

There are important policy reasons which militate in favor of our interpretation of I.R.C.P. 23. The construction we adopt today eliminates the possibility of a plethora of actions dealing with the same basic issues which would unreasonably burden plaintiffs, defendants, and the judicial process. *See* Weeks v. Bareco Oil Co., 125 F.2d 84, 94 (7th Cir. 1941). In addition, without the procedure we approve today separate actions would be economically unfeasible and recovery extremely unlikely in cases where each plaintiff has only a small claim. The defendant therefore would be allowed to profit by his own wrong. *See* Daar v. Yellow Cab Co., 67 Cal.2d 695, 63 Cal.Rptr. 724, 433 P.2d 732 (1967).

 Reading I.R.C.P. 23(a)(3) and I.R.C.P. 23(d) in *pari materia* and construing them liberally under I.R.C.P. 1, we conclude they command broad use of class actions whenever the interests of absentees can be adequately represented. We specifically hold that in this action brought under I.R.C.P. 23(a)(3) all members of the class will be considered parties to the action unless they expressly notify the court that they wish to be excluded from the action. Under I.R.C.P. 23(d) the district court shall provide such notice to this effect to all those who were Upper Valley subscribers any time during the period of December 15, 1970 through July 26, 1971.

 Upper Valley contends that even if we find the case at bar to be a good class action, there are serious problems concerning Bush's ability to represent the class. The following are appropriate criteria to evaluate representation:

(1) Do the interests of the representative party coincide with those of the class?

(2) Can the representative party and his attorney be expected to prosecute the action vigorously?

Dolgow v. Anderson, 43 F.R.D. 472, 494 (E.D.N.Y.1968) rev'd on other grounds, 438 F.2d 825 (2d Cir. 1971). *See also* 3B Moore's Federal Practice, *supra*, § 23.07 [1], pp. 23–351. We find no indication in the record that such standards have not been met. The interests of all subscribers coincide in that they were all overcharged for the cable television service at the rate of $1 per month. There is nothing in the record to indicate that Bush has not prosecuted this action vigorously and competently.

On remand Plaintiff Bush will be entitled to recover reasonable attorneys fees from the sum that the subscribers recover from Upper Valley. Accordingly, each subscriber should be ordered to contribute a reasonable portion of his recovery toward attorney fees for Bush. It is only fitting that those who will benefit from the litigation also contribute proportionately to the expenses incurred in pursuit. *See* 3B Moore's Federal Practice, *supra,* § 23.91.

The judgment of the district court is reversed and remanded for further proceedings consistent with the views expressed herein. No costs allowed.

DONALDSON, C. J., and McQUADE, McFADDEN and BAKES, JJ., concur.

ON PETITION FOR REHEARING

SHEPARD, Chief Justice.

The petition for rehearing in the above entitled action was granted and reargued. The Court has reviewed the record, considered the arguments presented by counsel, and we continue to adhere to the views expressed and the conclusion reached in our earlier opinion.

DONALDSON, McQUADE, McFADDEN and BAKES, JJ., concur.