In this action brought by the plaintiff to collect a hospital bill allegedly due from the defendants, two special defenses were put forward by the defendants. The first concerned the alleged failure on the part of the plaintiff to bill the state welfare department under Title XIX of the Social Security Act although it had knowledge that the defendants were eligible therefor. 79 Stat. 343, as amended, 42 U.S.C. § 1396-1396i (Sup. III, 1973). The second special defense alleged that the plaintiff is the recipient of federal funds under the Hill-Burton Act;60 Stat. 1040;42 U.S.C. § 291-291o-1 (1970); (hereinafter sometimes referred to as Hill-Burton) and raised in essence the issue of whether the provision of that act that federally-funded hospitals must provide a reasonable volume of services to persons unable to pay therefor acts as a defense in a suit by a hospital for payment for service rendered to such a person. 60 Stat. 1040; 42 U.S.C. § 291c (e)(2) (1970). The trial court (Bernstein, J.) sustained the plaintiff's demurrer to the second special defense. Thereafter the defendants repleaded in greater detail but essentially the same defense and added a third special defense setting forth Public Health Services' proposed regulations regarding the plaintiff's obligations under the *Page 541 
Hill-Burton Act. They also filed a counterclaim seeking a declaratory judgment that the operation of the plaintiff fails to comply with the Hill-Burton Act and constitutes a public nuisance due to its failure to provide a reasonable volume of services free or below costs. Incidental thereto, the defendants seek $250 damages and attorneys' fees.
The plaintiff then moved to expunge the second and third special defenses as being repetitious. That motion was granted, and the counterclaim was, on motion of the plaintiff, erased. The plaintiff then moved for summary judgment, and that motion was granted by the court (Adorno, J.). Judgment was entered in favor of the plaintiff to recover of the defendants $567.40 plus its costs which were taxed at $26.90. From that judgment, the instant appeal has been filed. The defendants have addressed themselves to the rulings by the trial court in sustaining the demurrer to the second special defense, in granting the motion to expunge the repleaded second special defense and the third special defense, in granting the motion to erase the counterclaim, and in entering summary judgment confirming the previous rulings set forth above.
In the assignments of error alluded to above, no mention was made of the procedural irregularity in the granting of the motion for summary judgment before the pleadings were closed. Practice Book § 298 provides that "[i]n any action, . . . after the pleadings have been closed, any party may move for a summary judgment." The defendants apparently waived any argument regarding the validity of their position in the first special defense by not contesting that issue at the trial court level. Because the question was not raised in or decided by the trial court, we decline to consider it. Practice Book §§ 223, 652; Hartmann
v. Smith, 158 Conn. 613. *Page 542 
The plaintiff's demurrer to the second special defense must, in accordance with our practice, admit all facts well pleaded. Stamford Dock Realty Corporation v. Stamford, 124 Conn. 341. For the purposes of that demurrer, it must be assumed that the plaintiff is a recipient of Hill-Burton funds and had failed to provide a certain percentage of its services free of charge to those unable to pay therefor and that the defendants received services for which they were unable to pay. The plaintiff argues that even if those facts are true, such a defense is legally insufficient because the defendants had no standing in the defense of this lawsuit to challenge the plaintiff's performance under the Hill-Burton Act. With that contention, we agree.
The Hill-Burton Act was enacted in August, 1946. Its purposes are quoted in a footnote.[1] To carry out those purposes,42 U.S.C. § 291a (1970) appropriates sums of money to be paid to states which submit acceptable plans to the surgeon general for the construction and modernization of hospitals and other medical facilities. Other sections of the act set forth the requirements which a state application must fulfil in order to be accepted. *Page 543 
Pursuant to the provisions of the Hill-Burton Act, the surgeon general issued a regulation which was in force when this action was commenced. That regulation appears, in part, in a footnote.[2]
Neither the Hill-Burton Act nor any regulation promulgated thereunder contains any express authority giving legal standing to nongovernmental parties who would seek to enforce a hospital's obligation to provide a "reasonable volume" of services to those "unable to pay therefor."
A review of federal decisions since the enactment of the Hill-Burton Act supports the proposition that although there was no express creation of a private civil remedy in the act, such a remedy could be implied. SeeEuresti v. Stenner, 458 F.2d 1115; Corum v. Beth Israel Medical Center,359 F. Sup. 909; Organized Migrants in Community Action, Inc. v. JamesArcher Smith Hospital, 325 F. Sup. 268; Cook v. Ochsner FoundationHospital, 319 F. Sup. 603; but see Stanturf v. Sipes, 224 F. Sup. 883.Cook v. Ochsner Foundation Hospital, supra, 606, *Page 544 
held that "the Hill-Burton Act is designed, at least in part, to benefit persons unable to pay for medical services. Such people are not the sole beneficiaries of the act, but they certainly are the object of much of the act's concern."
New York City Coalition for Community Health v. Lindsay,362 F. Sup. 434, 441, found sufficient standing to enable the plaintiff to invoke federal jurisdiction. It held that standing does not focus on issues but on the party seeking to get his complaint before a federal court. Flast v. Cohen, 392 U.S. 83, 99. The standing of the plaintiff was based on a three-pronged formula involving (1) a personal status and interest that imparts the concrete adverseness required, (2) being within the zone of interests covered by the act, and (3) no exclusion of judicial review by the act.
All the cases brought to our attention by counsel or our own research involve the question of standing of nongovernmental plaintiffs in class action suits to compel compliance with the provisions of the Hill-Burton Act. No case has been cited, nor have we found any which holds that a private party has the individual right to enforce commitments made by a hospital to either the state or federal government. Even if it were assumed that private parties might have standing as interested plaintiffs to enforce obligations under Hill-Burton, it does not logically follow that former patient defendants in a collection action by a hospital for services previously rendered have the right to refuse payment of a hospital bill because of the alleged failure of the hospital to comply with its Hill-Burton obligations. There is no authority for such an implied sanction. To allow such a defense would introduce into every hospital collection case, in addition to the usual issues such as the rendition of the services in *Page 545 
question, the reasonableness of the charges, the liability of the defendant for the particular services rendered, such varied and collateral issues as the efforts of the hospital to provide a reasonable volume of below cost or free medical services, the economic conditions of the area served by the hospital, contributions from charitable corporations, the budget of the hospital, the determination of the class to be benefited by Hill-Burton funds, and whether the defendant as a member of the "working poor" was qualified for inclusion at the time of the rendition of the services. Also the defendant would be required to show the failure of the hospital on any given date to provide a sufficient percentage of care mandated by the act. It cannot reasonably be said that the act ever implied the creation of such a right in an individual defendant as a defense in an action similar to that involved herein.
We are not unmindful that in Gonzales v. Personal Collection Service,494 P.2d 201 (Wyo.), in an action by an assignee to recover on accounts due a county memorial hospital, the court allowed an affirmative defense to the collection of the hospital bill. There a state statute provided that a county memorial hospital established and maintained under the statute shall be kept and maintained as a public hospital. "It . . . shall furnish free to such persons being resident of the county as have no means to pay for the same all necessary facilities and maintenance during the time that such persons without means may be required to remain there for proper treatment. . . ." Wyo.Stat.Ann. § 18-320 (1957). The court allowed the facts encompassed by the statute to be pleaded as an affirmative defense and held that the burden of proof on an affirmative defense for one who asserts an exception is on the party asserting the same. Such a defense is spelled out in the statute and is properly *Page 546 
allowable under state law. We conclude, nevertheless, that Hill-Burton furnishes no parallel direction which would form the basis for an individual nonclass defense.
For the reasons stated above, we hold that the demurrer was properly sustained.
On the issue of the expunging of the repleaded special defense, it must be noted that the new special defenses were based upon the plaintiff's alleged failure to fulfil its Hill-Burton obligations. After a demurrer has been sustained, any attempt to replead a cause of action or a defense "must avoid the defect which caused the demurrer to be sustained or it can be expunged on motion." 1 Stephenson, Conn.Civ.Proc. (2d Ed.) § 119, p. 490. The ruling on the demurrer is the law of the case and may only be tested on appeal. Kelly v. Waterbury, 96 Conn. 494, 496. An examination of the repleaded special defense and the defendants' argument opposing the motion to expunge leads us to the conclusion that the special defenses were essentially similar to the one previously demurred to, and we therefore find no error in the expunging of them.
On the counterclaim, which primarily seeks a declaratory judgment from the Circuit Court, the plaintiff contends that it was jurisdictionally defective. Connecticut courts do not have inherent power to render declaratory judgments. Ackerman v. Union New Haven Trust Co.,91 Conn. 500. That power is given to the Superior Court and the Court of Common Pleas. General Statutes § 52-29. The Circuit Court has no power to render a declaratory judgment. Spencer v. Marshall,
3 Conn. Cir.Ct. 516. The addition of a claim for incidental damages and attorneys' fees supplemental to the claim for declaratory judgment relief does not change the essential nature of the cause of action. Berry v. *Page 547 Hartford National Bank Trust Co., 125 Conn. 615, 618; see also UnitedStates Fidelity Guaranty Co. v. Spring Brook Dairy, 135 Conn. 294,299.
 For all of the foregoing reasons, the judgment appealed from must be affirmed.
There is no error.
In this opinion HAMILL, J., concurred.