643 P.2d 1071

Marcia BRAUN, Appellant,

v.

ADA COUNTY, Idaho, and its Board of County Commissioners, Respondents.

No. 13526.

Supreme Court of Idaho.

April 7, 1982.

---

Phillip S. Oberrecht, of Moffatt, Thomas, Barrett & Blanton, Chartered, Boise, for appellant.

Jim C. Harris, Ada County Pros. Atty., and J. Kelley Wiltbank, Deputy Pros. Atty., Boise, for respondents.

Jay Hedgepeth and Patricia Hofstra, of American Hospital Association, Chicago, Ill., Joseph D. McCollum, Jr., and Karen L. Lansing, of Hawley, Troxell, Ennis & Hawley, Boise, for amici curiae.

BAKES, Chief Justice.

On October 30, 1978, appellant Marcia Braun gave birth to a son who was born prematurely and who required emergency treatment. Both the birth and the emergency treatment occurred at St. Luke's Hospital, Boise, Idaho. On November 21, 1978, the appellant applied to Ada County Emergency Welfare for financial assistance with the hospital bill which totalled $1,475.67. On January 15, 1979, the board of Ada County Commissioners denied appellant's application. Pursuant to I.C. § 31–3505, appellant requested and obtained a hearing before the commissioners on the matter. Following a hearing on May 22, 1979, the commissioners concluded that appellant was not medically indigent under I.C. § 31–3502(1) in that she still had other resources available for the satisfaction of the hospital charges in the form of St. Luke's Hospital's uncompensated services obligation under the federal Hill-Burton Act, 42 U.S.C. § 291c(e)(2). Consequently, appellant's application for assistance was again denied.

Braun appealed to the District Court for the Fourth Judicial District. The parties stipulated that appellant would be medically indigent under I.C. § 31–3502(1), and therefore entitled to county aid, except for St. Luke's unsatisfied Hill-Burton obligation. The district court upheld the decision of the commissioners denying assistance, and appellant has further appealed to this Court.

Idaho Code title 31, chapters 34 and 35, establish the framework through which the state provides needed medical care to those persons who otherwise would be financially unable to obtain it. I.C. § 31–3406 sets forth the county's obligation to aid the medically indigent. It states:

"31–3406. PROVISION FOR RELIEF. —The county commissioners of such county shall, after the filing of the application and findings of the clerk as aforesaid, if in their judgment the applicant is medically indigent make such provisions for his relief, or pay for his hospitalization, as may be necessary under the circumstances."

In order to qualify for county aid under I.C. § 31–3406, a person claiming medical indigency must meet the following definition found at I.C. § 31–3502(1):

"31–3502. DEFINITIONS.—As used in this chapter, and chapter 34, title 31, Idaho Code, the terms defined in this section shall have the following meaning, unless the context clearly indicates another meaning:

"(1) 'Medically indigent' means any person who is in need of hospitalization and who, if an adult, together with his or her spouse, or whose parents or guardian if a minor, does not have income and other resources available to him *from whatever source* which shall be sufficient to enable the person to pay for necessary medical services." (Emphasis added.)

Ada County argues, and the district court held, that appellant does not meet this definition in that resources to satisfy the medical bills were available in the form of St. Luke's Hospital's uncompensated services obligation under the federal Hill-Burton Act.

Briefly, the Hill-Burton Act, 42 U.S.C. 291 *et seq.*, establishes a program of grants, loans and loan guarantees to finance the construction and modernization of hospitals and other medical facilities. Generally, in order to qualify for Hill-Burton funds, a hospital must give assurance that it will, among other things, make available "a reasonable volume of services to persons unable to pay therefor . . . ." 42 U.S.C. § 291c(e)(2); 42 C.F.R. § 53.111. Thereafter, a hospital will be deemed to be in presumptive compliance with its obligation under the assurance if each year for twenty years it provides to qualifying applicants medical services without charge in an amount not less than the lesser of 3% of operating costs or 10% of all federal assistance provided to the facility under the act. 42 C.F.R. 53.111(d). In order for a hospital to obtain credit toward the yearly uncompensated services figure, the cost of services "written off" may not include any amount which the recipient of services "has received, or is entitled to receive . . . under a

governmental program." 42 C.F.R. 53.-111(f)(2)(i). It is thus argued by appellant that since the Hill-Burton uncompensated services obligation does not cover medical services otherwise payable through governmental programs, including Ada County's obligations under Idaho Code title 31, chapters 34 and 35, the Hill-Burton obligation is meant to be a last resort and cannot be included as a resource of appellant to preclude her from obtaining county aid for her medical expenses.

Despite appellant's argument, the court below determined that Ada County, rather than St. Luke's Hill-Burton uncompensated services obligation, constituted the true last resort for satisfying the needs of the medically indigent. In reaching its decision, the court reviewed three statutes, I.C. §§ 31–3502(1), –3508,[1] –3509,[2] and stated: "The accumulative effect of these statutes is a declaration by the legislature that the county shall be the last resort following any other source or credit available to finance the care. While the legislature has not specifically mentioned the Hill-Burton obligation, it has placed the county obligation behind 'other resources available to him from whatever source' . . . ." For the reasons discussed below, we conclude that the district court's interpretation of the above statutes was overbroad.

I.C. § 31–3501 (Supp.1979) constitutes the legislature's declaration of policy concerning the provision of medical care for the indigent sick at the time this case arose. It states the following:

"31–3501. DECLARATION OF POLICY.—In order to safeguard the public health, safety and welfare, and to provide

---

1. "31–3508. AMOUNT OF AID FOR HOSPITALIZATION.—The county responsible for payment shall pay regular hospital charges for the hospitalization of a medically indigent person to the hospital rendering such services. The bill submitted for payment pursuant to section 31–3405, Idaho Code, shall show the total hospital charges less any amounts which have been received under any other federal or state law. Bills of less than twenty-five dollars ($25.00) shall not be presented for payment."

2. "31–3509. COLLECTIONS BY HOSPITALS.—Hospitals making claims for the hospitalization of medically indigent persons shall make all reasonable efforts to determine liability for the account so incurred from any available insurance or other sources available for payment of such expenses prior to submitting the bill to the county for payment. In the event any payments are thereafter received for charges which have been paid by a county pursuant to the provisions of chapters 34 and 35, title 31, Idaho Code, said sums shall be paid over to such county."

suitable facilities and provisions for the care and hospitalization of indigent persons in this state, and *to provide for the payment thereof*, the respective counties of this state shall have the duties and powers as hereinafter provided." (Emphasis added.)

As indicated by the italicized portion of I.C. § 31–3501, an additional objective of the relevant statutes is to assure that medical facilities receive *payment* for the services rendered by them.[3] Such an objective goes hand in hand with the stated intent of providing "suitable facilities and provisions for the care and hospitalization of indigent persons," since the financial solvency and stability of medical facilities is an important aspect of assuring that the desired medical services and facilities are available.

A review of the three statutes discussed by the district court further supports the legislature's objective of assuring that medical facilities obtain payment for services rendered to indigents. I.C. § 31–3502(1) speaks in terms of a medically indigent person being one who has insufficient resources "to *pay* for necessary medical services." (Emphasis added.) I.C. § 31–3508, which governs the amount of aid to be provided by the county, states that the amount of the bill is to be reduced by "any amounts which *have been received* under any other federal or state law." (Emphasis added.) Clearly, I.C. § 31–3508 anticipates the actual receipt by the hospital of funds under other governmental programs for services rendered to indigents before the county's obligation for payment will be reduced. I.C. § 31–3509 refers to claims made by hospitals in behalf of the medically indigent.[4] That section requires hospitals making such claims to determine the existence of "other sources available for *payment*," and requires the hospital to reimburse the county for "any *payments* thereafter *received* . . . ." (Emphasis added.) The use of the words "payments" and "received" again reflects the legislature's declared policy that not only should indigents have access to medical care, but also that hospitals should obtain actual compensation for the services which they render to indigents.

Under a hospital's Hill-Burton uncompensated services obligation, however, the costs of providing medical services to indigent persons are not actually paid, but are simply written off and taken as a loss by the hospital. I.C. § 31–3502(1), as written, does not encompass the use of such a writeoff as a resource available for the satisfaction of debts incurred by the medically indigent; rather, "other resources," in keeping with the legislature's declaration of policy, refers to sources of funds to compensate the hospital for the costs of rendering services to the medically indigent. The fact that the words "from whatever source" are used to describe the words "resources available" should not obscure the fact that both terms are used in the context of enabling the indigent person "to *pay* for necessary medical services." (Emphasis added.) Consequently, we conclude that a hospital's Hill-Burton uncompensated services obligation is not a resource available under I.C. § 31–3502(1) which would preclude applicants from obtaining county medical assist-

---

3. In 1980 the state legislature amended the declaration of policy as follows:

"31–3501. DECLARATION OF POLICY. In order to safeguard the public health, safety and welfare, and to provide suitable facilities and provisions for the care and hospitalization of ~~indigent~~ persons in this state, *and, in the case of indigent persons,* to provide for the payment thereof, the respective counties of this state shall have the duties and powers as hereinafter provided." 1980 Idaho Sess. Laws, ch. 185, section 1.

However, we do not view that change as affecting the legislature's intent to provide *payment,*

*i.e.,* actual compensation, to medical facilities for services rendered in behalf of indigents. The declaration of policy still clearly speaks in terms of providing *payment,* and the statutes which, as discussed below, buttress that objective were not the subject of amendment.

4. Although it does not appear from the record that I.C. § 31–3509 is directly applicable to this case, the appellant rather than St. Luke's having made application for county aid, the section, nevertheless, was relied upon by the district court in interpreting I.C. § 31–3502(1), and we therefore discuss it here.

ance if otherwise qualified to receive it.[5] Since our holding is based upon the interpretation of our state statutes, we do not decide the question of whether the legislature may specifically include a hospital's Hill-Burton uncompensated services obligation as a resource available under I.C. § 31–3502(1) should it desire to do so.[6]

The judgment is reversed and the case remanded with directions to the district court to order respondent Ada County to pay the amount due pursuant to the stipulation between the parties. Costs to appellant.

McFADDEN, BISTLINE and DONALDSON, JJ., concur.

SHEPARD, Justice, dissenting:

I cannot agree with the result obtained by the majority. It is clear that the hospital entered into a contract with the federal government wherein federal aid was received and the hospital in return therefor agreed to supply a certain minimal level of services to indigent patients. That obligation of the hospital has not been performed. Under the guise of the present action, the hospital in effect seeks to shift to the county its contractual burden of supplying free services.

Indigents are third party beneficiaries of the contract in which the hospital agrees to provide free medical care in exchange for federal assistance. *Euresti v. Stenner*, 458 F.2d 1115 (10th Cir. 1972). Third party beneficiaries are entitled to have the contract enforced and to sue for any damages that result from a breach of the contract. *Just's, Inc. v. Arrington Construction Co.*, 99 Idaho 462, 583 P.2d 997 (1978); *Bush v. Upper Valley Telecable Co.*, 96 Idaho 83, 524 P.2d 1055 (1973). As third party beneficiaries, indigents also have a cause of action for damages. *Saine v. Hospital Authority of Hall County*, 502 F.2d 1033 (5th Cir. 1974). The Hill-Burton Act expressly contemplates that third parties will be able to bring an action to enforce compliance with the hospital's contractual assurances if certain preliminary procedures are followed. 42 U.S.C. § 300s–6. It is held that an indigent's right to receive free medical care under Hill-Burton is a property interest entitled to due process protections. *Davis v. Ball Memorial Hospital Ass'n*, 640 F.2d 30 (7th Cir. 1980); *but see Newsom v. Vanderbilt University*, 653 F.2d 1100 (6th Cir. 1981).

Hence, I believe an indigent, such as Braun, has a cause of action against the hospital requiring it to provide her with free or reduced cost medical care. The cases uniformly hold that a private right of action exists to force a hospital to provide a reasonable volume of free or reduced cost services. *Davis v. Ball Memorial Hospital Ass'n, supra; Euresti v. Stenner, supra; Lugo v. Simon*, 453 F.Supp. 677 (N.D.Ohio 1978); *Corum v. Beth Israel Medical Center*, 359 F.Supp. 909 (S.D.N.Y.1973). The only divergence I perceive is on the issue as to whether or not a hospital can be required to provide services to a particular individual. *See Yale-New Haven Hospital v. Matthews*, 32 Conn.Sup. 539, 343 A.2d 661 (Conn.C.P.App.Div.1974), *cert. denied* 423

---

5. We note that our holding does not mean that St. Luke's will be unable to meet its uncompensated services obligation under the Hill-Burton Act. Many individuals who may not qualify for county support will nevertheless be indigent for purposes of the Hill-Burton uncompensated services obligation. There are numerous differences in the eligibility requirements for obtaining aid under the county and the Hill-Burton programs. For example, there are no residency requirements under Hill-Burton as there are for county aid. Also, the Idaho statutes impose strict time and procedural requirements for filing claims with the counties. Even the financial and income requirements for aid differ between the county and Hill-Burton programs.

Thus, persons not qualifying for county aid may still be eligible for assistance through a hospital's Hill-Burton uncompensated services obligation.

6. Amici curiae have argued that to allow the county to include a hospital's Hill-Burton uncompensated services obligation as a resource available would conflict with federal policies supporting the creation of that obligation, and therefore violate the supremacy clause, Art. VI, § 2, of the United States Constitution. Amici curiae cite one unreported federal district court opinion which, in such a situation, ruled that the Hill-Burton obligation was the last resort.

U.S. 1024, 96 S.Ct. 467, 46 L.Ed.2d 398 (1975); *Valley Credit Service Inc. v. Mair*, 35 Or.App. 637, 582 P.2d 47 (1978); *Falmouth Hospital v. Lopes*, 376 Mass. 580, 382 N.E.2d 1042 (1978). Those courts so holding generally rely on and cite *Saine v. Hospital Authority of Hall County*, 502 F.2d 1033 (5th Cir. 1974). It is my opinion that such courts have misinterpreted *Saine*. In *Saine* the Fifth Circuit upheld an individual plaintiff's right to sue for damages and injunctive relief for a hospital's failure to comply with the indigent's medical care requirements of Hill-Burton. Recently that same court stated that *Saine* stands for the proposition that "[t]he free care obligation is legally enforceable, and vests a cause of action in the indigent beneficiaries to sue for the free care." *Presbyterian Hospital of Dallas v. Harris*, 638 F.2d 1381, 1384 (5th Cir. 1981). *See also Hospital Center at Orange v. Cook*, 177 N.J.Super. 289, 426 A.2d 526 (App.Div.1981) (holding that the private right of action available to individual indigents can be used either affirmatively or defensively) (overruling *Cooper Medical Center v. Joyner*, 165 N.J.Super. 482, 398 A.2d 606 (1979)).

Thus indigents have a cause of action for free medical care and their right to such medical care is a legitimate expectation rising to the level of a property right and requiring due process protections. That, however, does not end the inquiry. It must be determined whether such a right amounts to "other resources available from whatever source" under I.C. § 31–3502(1) so as to prevent Braun from being categorized as "medically indigent". If Braun is not "medically indigent" the inquiry is at an end and the county is not liable.

Clearly a cause of action is a valuable resource. If a hospital patient seeking assistance from a county was entitled to Medicare, Medicaid, or Social Security benefits, all entitlement programs, there would be resources available to preclude inclusion within the term "medically indigent" in I.C. § 31–3502(1). If an indigent were injured in an automobile accident and had a cause of action against the owner or driver of the other vehicle, such would be a resource available which the county might consider in its determination of medical indigency. *See also* Webster's New International Dictionary (2d Ed. 1957) defining resources as "possible sources of revenue".

Nothing in the record here indicates that Braun ever applied to the hospital to receive free care required to be given under federal law, nor is there any indication that the hospital informed her or any other patient that they might be entitled to such free care. I deem that a county is entitled to require that applicants for assistance at least inquire into the availability of other resources to satisfy their medical bills prior to turning to the county for aid. I.C. § 31–3502(1).