# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 36839

ST. LUKE'S MAGIC VALLEY REGIONAL
MEDICAL CENTER, LTD, an Idaho
nonprofit corporation,

    **Petitioner-Appellant,**

v.

BOARD OF COUNTY COMMISSIONERS
OF GOODING COUNTY,

    **Respondent.**

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

**Boise, December 2010 Term**

**2010 Opinion No. 6**

**Filed: February 2, 2011**

**Stephen W. Kenyon, Clerk**

Appeal from the District Court of the Fifth Judicial District of the State of Idaho, Gooding County. The Honorable R. Barry Wood, District Judge.

The decision of the district court is <u>vacated</u> and the case is <u>remanded</u>.

Steven Pitts, Twin Falls, for appellant.

Calvin H. Campbell, Gooding County Prosecuting Attorney, Gooding, for respondent. Luverne E. Shull argued.

_____

J. JONES, Justice.

St. Luke's Magic Valley Regional Medical Center appeals the district court's decision affirming Gooding County's denial of its application for medical indigency assistance on behalf of Maria del Carmen Perez. We vacate the judgment of the district court and remand for further proceedings.

## I.
### Factual and Procedural Background

Maria del Carmen Perez received emergency medical treatment at St. Luke's from June 17, 2008, through June 19, 2008. At that time, she was an undocumented alien living in Gooding County, Idaho. As a result of her medical treatment, Perez incurred medical expenses in excess of $11,000. St. Luke's timely filed an application with Gooding County (County) seeking county

1

indigency assistance for payment of Perez's medical expenses pursuant to title 31, chapter 35 of the Idaho Code (Medical Indigency Act). On August 11, 2008, the Gooding County Board of Commissioners (Board) denied the application on the ground that St. Luke's could seek federal funding under Section 1011 of the Medicare Modernization Act of 2003 (MMA), which is a federal program that offers payment to participating hospitals for emergency medical treatment provided to undocumented aliens.[1] The Board also determined that Perez was not medically indigent because she and her significant other had sufficient discretionary income available to make payments toward her medical expenses. St. Luke's appealed the initial denial of the application, and the Board held a hearing on October 16, 2008. Following the hearing, the Board again denied the application on the ground that Section 1011 funding was a resource available to St. Luke's for reimbursement of Perez's medical expenses. The Board's final decision did not involve a determination that Perez was not medically indigent. Following review by the pre-litigation screening panel, St. Luke's filed a petition for judicial review with the district court. The district court upheld the denial of the application, concluding that the Board properly considered St. Luke's ability to obtain payment for Perez's medical expenses under Section 1011 in determining that Perez was not medically indigent. St. Luke's timely appealed to this Court.

On appeal, St. Luke's argues that the Board erred in determining that Section 1011 was an available resource for the payment of Perez's medical expenses because the rules governing the Section 1011 program require a hospital to seek reimbursement from state indigency programs prior to requesting Section 1011 assistance. St. Luke's further asserts that Section 1011 funding should not be considered when determining whether Perez is medically indigent because St. Luke's is eligible for Section 1011 payment, not Perez, and only resources available to the patient are relevant when determining medical indigency.

The County, on the other hand, argues that while a hospital must seek all available resources prior to requesting Section 1011 funding, the federal rules expressly exempt hospitals from the duty to seek payment from state indigent programs prior to seeking Section 1011 assistance. The County also argues that because St. Luke's would be requesting Section 1011 assistance to cover Perez's medical expenses, St. Luke's and Perez have an "identity of interest,"

---

[1] The Section 1011 program is a voluntary program that Medicare-providing hospitals can opt into. Fed. Reg. 25578, 25584 (May 13, 2005). During oral argument, counsel for St. Luke's indicated that St. Luke's is a participant in the Section 1011 program.

and it is irrelevant that Perez cannot personally apply for Section 1011 funding. Both parties request attorney fees on appeal.

## II.
## Issues on Appeal

I.  Whether the Board erred in denying St. Luke's application for indigency assistance on the ground that federal assistance under Section 1011 of the Medicare Modernization Act of 2003 was an available resource.

II.  Whether either party is entitled to attorney fees on appeal.

## III.
## Standard of Review

A county board of commissioners' denial of an application for medical indigency benefits is reviewed under the Idaho Administrative Procedure Act, chapter 52, title 67, Idaho Code. I.C. §§ 31-3505G, 31-3511(5), 31-1506; *Mercy Med. Ctr. v. Ada Cty.*, *Bd. of Cty. Comm'rs of Ada Cty.*, 146 Idaho 226, 229, 192 P.3d 1050, 1053 (2008). This Court reviews the decision of the board of commissioners independently, as if it were appealed directly to this Court, while giving serious consideration to the district court's decision. *Id.* The Court's review is limited to the factual record that was before the county. I.C. § 67-5277. This Court will not substitute its judgment for that of the county on questions of fact if the county's findings are supported by substantial and competent evidence. *Mercy Med. Ctr.*, 146 Idaho at 229, 192 P.3d at 1053. However, the Court is free to correct errors of law in the county's decision. *Id.*

This Court may only overturn the Board's decision upon a finding that the decision: (a) violates statutory or constitutional provisions; (b) exceeds the Board's statutory authority; (c) is made upon unlawful procedure; (d) is not supported by substantial evidence in the record; or (e) is arbitrary, capricious, or an abuse of discretion. I.C. § 67-5279(3). Additionally, the party attacking the Board's decision must demonstrate that a substantial right has been prejudiced. I.C. § 67-5279(4).

## IV.
## Discussion

Idaho's Medical Indigency Act requires counties to contribute to the cost of providing

necessary medical care to county residents who are indigent. *See* I.C. § 31-3501.[2] In order for Idaho's medical indigency statutes to be applicable in a given case, there must be a finding that the patient is medically indigent as defined by Idaho Code section 31-3502(1).

In this case, the Board denied St. Luke's application on the ground that hospitals can apply for county indigency assistance only as a last resort and the federal Section 1011 program was an available resource for payment of Perez's medical expenses. However, in denying St. Luke's application, the Board never specifically determined whether Perez was medically indigent.[3] While the Board's initial decision denying the application specifically mentioned, as one of the grounds for the denial, that Perez was not medically indigent because she and her significant other had discretionary income available for payment of Perez's medical expenses, the Board's final decision did not include any finding regarding indigency. Because the Board's final decision replaced its initial decision, there has been no finding of indigency in this case and this Court is not in a position to make such a finding. Therefore, we must remand this case for a determination of whether Perez is medically indigent.

Even though this Court is not able to make a final determination regarding the indigency-related issues in this case, we find it advisable to provide guidance on the question of whether St. Luke's was required to apply for Section 1011 funding prior to seeking county indigency assistance on behalf of Perez. First and foremost, we must address whether Section 1011 funding can be considered an available resource when determining whether Perez is medically indigent. Idaho Code section 31-3502(1) defines medically indigent as "any person who is in need of necessary medical services and who, if an adult, together with his or her spouse, or whose parents or guardian if a minor, does not have income and other resources available to him from whatever source sufficient to pay for necessary medical services." I.C. § 31-3502(1). Idaho Code section 31-3502(17) then goes on to define resources as,

> all property, whether tangible or intangible, real or personal, liquid or nonliquid, including, but not limited to, all forms of public assistance, crime victims compensation, worker's compensation, veterans benefits, medicaid, medicare, and any other property from any source for which an applicant

---

[2] Unless otherwise noted, all statutory citations in this opinion will refer to the statutes in effect at the time St. Luke's filed its application with the County.
[3] While the district court held that the Board properly considered St. Luke's ability to obtain Section 1011 funding for payment of Perez's medical expenses in determining that Perez was not medically indigent, this conclusion is in error because the Board never made a finding regarding indigency.

4

and/or an obligated person may be eligible or in which he or she may have an interest. For purposes of determining approval for medical indigency only, resources shall not include the value of the homestead on the applicant or obligated persons' residence, a burial plot, exemptions for personal property . . . and additional exemptions allowed by county resolution.

I.C. § 31-3502(17).

The statutory language indicates that the Section 1011 program should not be considered when determining whether a patient is medically indigent because the statute only allows consideration of resources available to the patient, not to the hospital or provider. The definition of medically indigent specifically provides that the relevant inquiry is whether "a person who is in need of necessary medical services . . . does not have income and other resources *available to him* from whatever source sufficient to pay for necessary medical services." I.C. § 31-3502(1) (emphasis added). Additionally, the definition of resources also limits the type of public assistance that can be considered when determining whether a patient is medically indigent. In pertinent part, the statute defines resources to include "all forms of public assistance . . . for *which an applicant and/or an obligated person* may be eligible." I.C. § 31-3502(17) (emphasis added). The statute defines applicant as "any person who is or may be requesting financial assistance under this chapter." I.C. § 31-3502(4). Obligated persons is defined as "those persons who are legally responsible for an applicant." I.C. § 31-3502(7). As defined by the statute, a hospital is neither an applicant nor an obligated person. Instead, the hospital is a third party applicant. A third party applicant is defined as "a person other than an obligated person who completes, signs and files an application on behalf of the patient." I.C. § 31-3502(15). Admittedly, the statute is inconsistent because at times the person who received medical services is referred to as a patient, and at other times, as the applicant. However, reading the various provisions of the statute together, the term applicant is meant to refer to the person who has received medical services.[4] Consequently, nothing in the definitions of medically indigent or

---

[4] This interpretation of the term applicant is also supported by other statutory provisions in the Medical Indigency Act. For example, Idaho Code section 31-3505A requires the clerk "to promptly notify the applicant, or third party filing an application on behalf of the applicant, of any material information missing from the application . . . ." I.C. § 31-3505A. Idaho Code section 31-3505G provides, "an applicant, or a third party making application on an applicant's behalf, may seek judicial review . . . ." I.C. 31-3505G. This demonstrates that the person who received the medical services is considered the applicant even if the hospital is applying for county assistance on the patient's behalf as a third party applicant. It is logical to conclude that the hospital itself will never be the applicant because an application for county assistance will always contain the patient's name and information, while the hospital will simply complete the application on the patient's behalf.

resources allows for the consideration of resources available to the hospital, or third party applicant, when determining whether a person is medically indigent.

The district court relied on this Court's decision in *Braun v. Ada County*, 102 Idaho 901, 643 P.2d 1071 (1982), in concluding that a resource available to St. Luke's can be considered a resource available to Perez when determining whether she is medically indigent. In that case, the Court addressed the issue of whether the Board of Commissioners could consider St. Luke's participation in a federal assistance program when determining whether a patient was medically indigent. *Id.* at 904, 643 P.2d at 1074. The Court concluded that St. Luke's obligation to provide free medical services to indigent persons under the federal Hill-Burton program, in return for federal grants and loans to finance the modernization of the hospital, was not a resource available under Idaho Code section 31-3502(1) for determining whether the patient was medically indigent. *Id.* Central to the Court's analysis was that, under the federal program, the costs of providing medical services to indigent patients were not actually paid by the federal government, but were written off and taken as a loss by the hospital. *Id.* The Court pointed out that the Medical Indigency Act was meant to ensure that hospitals obtain actual compensation for the care provided to indigent patients. *Id.* Therefore, while this Court's holding in *Braun* does seem to support the district court's conclusion because the Court implicitly recognized that a resource available to the hospital may be considered a resource available to the patient in determining indigency, as mentioned above, the language in the statute does not support such a conclusion.

The next question then is whether, after determining that a patient is medically indigent, a medical provider participating in the Section 1011 program is required to apply for federal funding prior to seeking county indigency assistance. To answer this question, we must first recognize that it appears the Section 1011 program was intended to be a payor of last resort. Section 1011(c)(1) of the MMA provides that "the Secretary shall pay the amount . . . directly to eligible providers . . . to the extent that the eligible provider was not otherwise reimbursed (through insurance or otherwise) for such services during the fiscal year." Pub. L. 108-173, § 1011(c)(1), 117 Stat. 2066 (2003). Because Idaho's indigency program is also intended to be a payor of last resort,[5] the issue becomes which source a hospital or provider is required to apply to

---

[5]A 2010 amendment to Idaho Code section 31-3501(2) makes clear that "[t]he county medically indigent program and the catastrophic health care cost program are payers of last resort." I.C. § 31-3501(2) (2010).

first. In order to answer this question, it is necessary to analyze the relevant statutory provisions of the Medical Indigency Act.

Idaho Code section 31-3509, as it existed at the time St. Luke's filed its application for county indigency assistance, stated that,

> [p]roviders making claims for necessary medical services of medically indigent persons shall make all reasonable efforts to determine liability for the account so incurred from any available insurance or other sources available for payment of such expenses prior to submitting the bill to the county for payment. In the event that a provider has been notified that an individual qualifies for approval of benefits, such provider(s) shall submit a bill to third party insurance, medicaid, medicare, crime victims compensation and/or workers compensation for payment within thirty (30) days of such notice. In the event any payments are thereafter received for charges which have been paid by a county and/or the administrator pursuant to the provisions of this chapter, said sums up to the amount actually paid by the county and/or the administrator shall be paid over to such county and/or administrator within sixty (60) days of receiving such payment from other resources.

I.C. § 31-3509. The statute specifically provides a list of the sources that the provider is required to bill if the patient qualifies. The only sources listed in the statutory provision are third party insurance, medicaid, medicare, crime victims compensation, and workers' compensation, all of which are "resources" available to a patient. The provision does not contain any language indicating that other sources should be billed as well and, thus, the provision provides an exhaustive list of sources that a provider is required to bill prior to seeking county indigency assistance. The statute does not list the Section 1011 program. Therefore, a provider need not seek payment from the Section 1011 program prior to submitting a bill to the county.

Furthermore, the last sentence of this provision specifically indicates that the county can receive reimbursement from a medical provider for payments the provider has received from other sources. In other words, the statute contemplates that the county might make payment on behalf of an indigent patient, even when another payor exists, but could then seek reimbursement from the provider if the provider subsequently obtained payment from another source. Thus, while it may be true that the Legislature intended the county indigency program to be a payor of last resort, this does not necessarily mean that the county is free to deny indigency assistance simply because there is the possibility of payment from the Section 1011 program. Rather, the Legislature specifically provided that the county can receive reimbursement for its payment of medical expenses *if and when* the hospital or provider receives payment for the same expenses

7

from another source. This indicates that the county's last resort can come by way of reimbursement. As such, the statute would allow the county to pay St. Luke's for the medical services provided, and still receive reimbursement for the payment if St. Luke's did apply for, and receive, payment from the Section 1011 program.[6]

This interpretation of the statute is also supported by the 2010 amendment to Idaho Code section 31-3509. The amending language, as it appears in chapter 273 of the 2010 Session Laws, reads:

> (2) Hospitals and pProviders making claims for reimbursement of necessary medical services of provided for medically indigent persons shall make all reasonable efforts to determine liability and attempt to collect for the account so incurred from any available insurance or other sources available for payment of such expenses all resources prior to submitting the bill to the department county commissioners for review. In the event that a hospital or a provider has been notified that an individual a recipient is retrospectively eligible for benefits or that a recipient qualifies for approval of benefits, such hospital(s) or provider(s) shall submit or resubmit a bill to third party insurance, medicaid, medicare, supplemental security income, crime victims compensation and/or worker's compensation for payment within thirty (30) days of such notice. In the event any payments are thereafter received for charges which have been paid by a county and/or the administrator board pursuant to the provisions of this chapter, said sums up to the amount actually paid by the county and/or the administrator board shall be paid over to the department such county and/or board within sixty (60) days of receiving such payment from other resources. The department shall distribute the payment to the county and/or administrator pursuant to section 31-3510A, Idaho Code.

I.C. § 31-3509(2) (2010). The statute now requires hospitals and providers to not only attempt to determine liability for the medical expenses incurred, but also to attempt to collect payment for the medical expenses. Additionally, in the amended statutory provision, the Legislature specifically changed the term "sources" to "resources," which, as mentioned above, is limited to those resources available to an applicant or obligated person, and does not include sources, such as Section 1011 funding, that are available to a third party applicant like St. Luke's.

Furthermore, the Legislature also added subsections 3 and 4 to section 31-3509, which provide,

---

[6] We recognize the possibility that the administrator of the Section 1011 program may decline payment if, as it appears, the program is a payor of last resort. However, it is beyond the scope of this opinion to seek to reconcile an apparent conflict between the federal and state payor-of-last-resort provisions, particularly where we have no determination of the issue of medical indigency.

8

(3) Any amount paid by an obligated county or the board under the provisions of this chapter, which amount is subsequently determined to have been an overpayment, shall be an indebtedness of the hospital or provider due and owing to the obligated county and the board. Such indebtedness may include circumstances where the applicant is subsequently determined to be eligible for third party insurance, medicaid, medicare, supplemental security income, crime victims compensation, worker's compensation, other available insurance or other third party sources.

(4) The obligated county and the board shall have a first lien prorated between such county and the board in proportion to the amount each has paid. The obligated county and the board may request a refund from a hospital or provider in the amount of the overpayment, or after notice, recover such indebtedness by deducting from and setting off the amount of the overpayment to a hospital or provider from any outstanding amount or amounts due and payable to the same hospital or provider pursuant to the provisions of this chapter.

I.C. §§ 31-3509 (3) & (4) (2010). These subsections provide a means for the county to recover, through a lien or right of setoff, the amount a hospital or provider has been paid by any third-party source, including resources available to a patient as well as any other payment source. This further strengthens the conclusion that a county is not required to deny reimbursement to a participating hospital or provider simply because the Section 1011 program exists. Rather, a county has several mechanisms under the statute to seek reimbursement if the hospital or provider receives payment from third-party sources, including the Section 1011 program.[7] Thus, even though the Legislature characterized county medically indigent programs as payors of last resort in the 2010 amendments to the Medical Indigency Act, it clearly acknowledged that there would be instances where counties would initially pay medical expenses and then seek reimbursement from third party sources.

## V.
### Attorney Fees

Both parties seek an award of attorney fees pursuant to Idaho Code section 12-117. However, "I.C. § 12-117(1) does not allow a court to award attorney fees [on judicial review of] an administrative decision." *Smith v. Washington Cnty.*, 35851, 2010 WL 5093625, at *3 (Idaho

---

[7] It is also worth noting that because there is a specific quantity of money under the Section 1011 program that is allocated to the individual states, the County's determination that St. Luke's could seek Section 1011 funding seems speculative without knowing whether Idaho's funding was available or exhausted at the time of St. Luke's application.

9

Dec. 15, 2010). Thus, no fees may be awarded to either party under that section.

## VI.
## Conclusion

We vacate the decision of the district court and remand with instructions to remand to the Board for further proceedings consistent with this opinion. Costs on appeal are awarded to St. Luke's.

Justices BURDICK, W. JONES and HORTON and Justice Pro Tem KIDWELL CONCUR.